## PAGE *v.* BURNSTINE.

1. Sect. 858 of the Revised Statutes of the United States, which declares "that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court," applies to the courts of the District of Columbia as fully as to the Circuit and District Courts of the United States.

2. A. assigned to the amount of a certain loan his interest in a policy of insurance upon his life to B., his creditor. The latter agreed in writing to make such a settlement with A.'s representatives as the case may require, should he, in the event of A.'s death before the payment of the money, receive from the insurance company the amount due on the policy. Other similar assignments were from time to time made. The last assignment imports an absolute transfer to B. of all A.'s right, title, and interest in the policy and to the payments previously made therefor, and all benefit and advantage to be derived therefrom. Upon consideration of the evidence, — *Held*, that the assignment must be construed as appointing B., upon the death of A., to receive from the company such sum as would then be due on the policy, and after reimbursing himself to the extent of his loans to A., to pay the balance to the persons entitled thereto.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. William F. Mattingly*, for the appellant.
*Mr. Enoch Totten*, contra.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill, filed by the personal representative of Robert C. Page, for the purpose of securing for the estate of the decedent the benefit of a policy upon his life for $3,000, issued Nov. 22, 1866, by the American Life Insurance Company of Philadelphia. The bill conceded that the defendant Burnstine had an interest in the policy to the extent of any loans of money by him to the assured, and prayed an account for the ascertainment of such sums. The defendant resisted the relief asked, upon the ground that, at the death of the assured, he was the absolute owner, by assignment, of the policy, and, as such, entitled to receive, to his own use, the

entire sum which might be realized thereon. The amount due on the policy, $2,676.33, was paid by the company into court, to abide the result of this suit.

Among the depositions taken in the case was that of Burnstine. He testified in reference to the alleged loans by him to Page and the several assignments which he claims were executed to him by the assured.

The preliminary question for our consideration is whether Burnstine, on his own motion, can testify as a witness in the cause. The contention of the appellant is, that no party to an action, by or against a personal representative, can testify against his adversary as to any transaction with, or statement by, the deceased, unless called to testify thereto by the opposite party, or required to testify thereto by the court. Rev. Stat., sect. 858. This rule, it is claimed, applies to the courts of the District of Columbia as fully as to the Circuit and District Courts of the United States. The contention of the appellee is, that his competency is to be determined by sects. 876 and 877 of the Revised Statutes relating to the District of Columbia. These positions require careful consideration ; and it is essential to a clear understanding of the question, thus presented, to ascertain the history of the several provisions now incorporated as well in the Revised Statutes of the United States as in the Revised Statutes relating to the District of Columbia, upon the subject of the competency of witnesses in courts of justice.

To the third section of an act, approved July 2, 1864, making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1865, a proviso is annexed, "that in the courts of the United States there shall be no exclusion of any witness on account of color, nor in civil actions, because he is a party to, or interested in, the issue tried." 13 Stat. 351.

An act, approved on the same day, July 2, 1864, entitled "An Act relating to the law of evidence in the District of Columbia," provides, "that on the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action, or other proceeding in any court of justice in the District of Columbia, or before any person having by law, or by consent of parties, authority to hear, receive, and examine

evidence within said District, the parties thereto, and the persons in whose behalf any such action or other proceeding may be brought or defended, and any and all persons interested in the same, shall, except as hereinafter excepted, be competent and compellable to give evidence, either *viva voce* or by deposition, according to the practice of the court, on behalf of either or any of the parties to the said action or other proceeding: *Provided,* that nothing herein contained shall render any person who is charged with any offence in any criminal proceeding competent or compellable to give evidence for or against himself or herself, or shall render any person compellable to answer any question tending to criminate himself or herself, or shall in any criminal proceeding render any husband competent or compellable to give evidence for or against his wife, or any wife competent or compellable to give evidence for or against her husband, or in any proceeding instituted in consequence of adultery; nor shall any husband be compellable to disclose any communication made to him by his wife during the marriage, nor shall any wife be compellable to disclose any communication made to her by her husband during the marriage." 13 Stat. 374.

On the 3d of March, 1865, Congress passed another act upon the subject of the competency of witnesses, entitled " An Act to amend the third section of an act, entitled ' An Act making appropriations for sundry civil expenses of the government for the year ending the thirtieth day of June, 1865, and for other purposes,' so far as the same relates to witnesses in the courts of the United States." The act declares that said third section of the appropriation act of July 2, 1864, " be, and the same hereby is, amended by adding thereto the following proviso: *Provided, further*, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." Id. 533.

There is still another act which has an important bearing upon the question before us. We allude to that portion of

sect. 34 of the act of Feb. 21, 1871, creating a government for the District of Columbia, which declares that " the Constitution, and all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said District of Columbia as elsewhere within the United States " 16 id. 426. This provision was not affected by the subsequent displacement of the District government organized under that act.

Thus stood the law up to the date when the two revisions — one the Revised Statutes of the United States, and the other the Revised Statutes relating to the District of Columbia — went into operation.

If it be true, as argued, that the Supreme Court of the District of Columbia, although organized under and by authority of the United States, and possessing the same powers and jurisdiction as the circuit courts of the United States (12 Stat. 763; Rev. Stat. Dist. Col., sect. 760), was not intended to be embraced by the proviso to the third section of the appropriation act of July 2, 1864, and if, as may be further argued, the act of March 3, 1865, being, in terms, amendatory only of that section, was not intended to modify the special act of the latter date relating to this District, it is, nevertheless, quite clear that, from and after the passage of the act of Feb. 21, 1871, if not before, the act of March 3, 1865, became a part of the law of evidence in this District. The legal effect of the declaration that all the laws of the United States, not locally inapplicable, should have the same force and effect within this District as elsewhere within the United States, was to import into, or add to, the special act of July 2, 1864, relating to the law of evidence in the District, the exception, created by the act of March 3, 1865, to the general statutory rule, excluding parties as witnesses. This is manifestly so, unless it be that a statute affecting the competency of parties as witnesses in actions by or against personal representatives or guardians, in which judgment may be rendered for or against them, is " locally inapplicable " to this District. But such a position cannot be maintained consistently with sound reason. The same considerations of public policy which would require the enforcement of such a statute, as that of March 3, 1865, in

the Circuit and District Courts of the United States, without regard to the laws of the respective States on the same subject, would suggest its application in the administration of justice in the courts of this District. Congress no doubt felt that the general rule permitting parties to testify on their own motion put the representatives of deceased persons at a great disadvantage, if those proceedings against them by suit could, on their own motion, testify as to transactions with, or statements by, the decedent. To remedy that evil, the act of March 3, 1865, was passed, and it should not be held locally inapplicable to this District, simply because it enlarges the exceptions to the general rule established by the special act of July 2, 1864.

These views do not at all conflict with the previous decisions of this court, holding that certain provisions of the General Statutes of the United States relating to the practice and proceedings in the " courts of the United States " are locally inapplicable to territorial courts. Those decisions, it will be seen, proceeded upon the ground, mainly, that the legislatures of the Territories referred to, in the exercise of power expressly conferred by Congress, had enacted laws covering the same subjects as those to which the General Statutes of the United States referred. It was, therefore, ruled that the territorial enactments, regulating the practice and proceedings of territorial courts, were not displaced or superseded by general statutes upon the same subject passed by Congress in reference to " courts of the United States." *Clinton* v. *Englebrecht*, 13 Wall. 434; *Hornbuckle* v. *Toombs*, 18 id. 648; *Good* v. *Martin*, 95 U. S. 90. No such state of case exists here. The reasons assigned for the conclusion reached in those cases have no application to the question before us.

Such being the law when the Revised Statutes of the United States and the Revised Statutes relating to the District of Columbia went into operation (which was on the same day), we are to inquire whether Congress by those revisions made, or intended to make, any change in the particular rule of evidence now under examination. We are of opinion that no alteration of the previous law was made or intended. The special act of July 2, 1864, relating to the law of evidence in this District, is reproduced, *ipsissimis verbis*, in two

paragraphs, constituting sects. 876 and 877 of the District revision; the act of July 16, 1862 (12 Stat. 588, 589), the third section of the appropriation act of July 2, 1864, and the act of March 3, 1865, are consolidated into one paragraph, and, without the slightest material change of language, constitute sect. 858 of the Revised Statutes of the United States; and the provision already quoted from the act of Feb. 21, 1871, is reproduced in sect. 93 of the District revision. If we consulted alone sects. 876 and 877 of the Revised Statutes relating to the District, we should, perhaps, be constrained to hold that, in the courts of the District, *parties* could, upon their own motion, testify as well in actions by or against personal representatives as in any other action. But we cannot overlook the fact that, in the revisions, the language of the previous statutes have undergone no change whatever. We should not, therefore, permit the mere collocation or rearrangement of the previous statutes in the new revisions, adopted on the same day, to operate to change the law, and thereby defeat the will of Congress. Rev. Stat. Dist. Col., sect. 1296; Rev. Stat., sect. 5600.

For these reasons, we are of opinion that Burnstine could not, on his own motion, testify as to any transaction with, or statement by, the decedent, Page. His deposition as to such transactions and statements must be excluded from consideration.

Upon the merits of the case we waive any consideration of the question suggested in oral argument, as to whether Burnstine, consistently with public policy, could acquire by assignment any interest in the insurance upon the life of Page, beyond such amount as the latter actually owed him at the time of his death. No such question is raised in the pleadings, nor was it suggested or considered in the court below. We pass it by for the additional reason that its determination is unnecessary in the view which the court takes of this case.

The transactions between Page and Burnstine had their origin, it is conceded, in a loan of money by the latter to the former. To secure that loan an assignment was made of Page's interest in the policy to the extent of the sum borrowed. Each subsequent assignment shows, upon its face, a similar arrangement, until that of Jan. 7, 1873, was executed. The latter assignment, by itself, imports an absolute transfer to

Burnstine of all the right, title, and interest of the assured in the policy, and to the payments made therefor, and all benefit and advantage to be derived therefrom. But the circumstances disclosed in the record indicate, with reasonable certainty, that the real and only object of the execution of the assignment of Jan. 7, 1873, was to invest Burnstine with the entire control of the policy, to the end that, thereafter, the company might deal directly with him, and, upon the death of the assured, that he might be invested with full authority to receive the proceeds of the policy, and apply them in the repayment of such sum or sums as he had loaned to Page upon the security of the policy. In other words, the last assignment may be construed as simply appointing Burnstine, upon the death of the assured, to receive from the company such sum as would then be due on the policy, and, after reimbursing himself to the extent of his loans to Page, to pay the balance to the persons entitled thereto. A different construction of that instrument would place Burnstine in the position of being pecuniarily interested in the death of Page. Unless compelled to do so, we should not suppose that he had any desire or purpose to speculate upon the life of Page, or to do more than secure the repayment of the money actually loaned by him to the assured.

This construction of the assignment of Jan. 7, 1873, is fortified by other evidence. Cross, the local agent at Washington of the insurance company, drew the assignment. In his deposition, taken by the defendant, he testifies that Page admitted, about December, 1871, his inability to keep up the premiums. Burnstine was advised of these facts. Cross thereupon recommended to him that, in order to save himself, he should secure an absolute assignment of the policy. Nothing was said by the parties, upon the occasion when the assignment was drawn, as to its consideration. If the intention had been, upon the part of Page, to make an unconditional sale, and upon the part of Burnstine, to make an unconditional purchase, of the policy, something would have been then said indicating such an intention. That portion of the evidence, which we are at liberty to consider, tends to show that Burnstine acted upon the advice of Cross, and took an absolute assignment, with the object of saving himself, — a result which

can be accomplished by awarding to him, out of the proceeds of the policy, such sum as will reimburse him for the loans made to Page.

This conclusion is strengthened by the language employed by Burnstine in his receipt of Oct. 2, 1868. In that paper, he acknowledges the receipt from Page of six orders, for $50 each, upon the disbursing clerk in the Post Office Department, and agrees that in the event Page dies before the orders are paid, and he, Burnstine, should receive from the insurance company the whole or a part of the amount due on the policy, he " would make such a settlement with his [Page's] representatives as the case may require."

This obligation of Burnstine was not, in terms, withdrawn or cancelled in any of the assignments thereafter executed, and the receipt of Oct. 2, 1868, should not, therefore, be overlooked in ascertaining the real purpose the parties had in the assignment of Jan. 7, 1873. Our conclusion is still further strengthened by the language in one of the conditions inserted in the policy (of which, it must be assumed, the parties were aware), to the effect that, " in case of the assignments of a policy, whether as security or otherwise, satisfactory proofs of the assignee's interest in the insured life must be furnished with the proofs of death." If the company, or Burnstine, understood that the latter, by the assignment of Jan. 7, 1873, became entitled to the whole sum due on the policy at the death of the assured, without reference to the amount Burnstine had actually paid out, it would have been an idle ceremony for the latter to have furnished proofs of his interest in the assured life.

The decree must be reversed, and the cause remanded with directions that an account be taken, as well of the sums actually loaned or paid by Burnstine to Page upon the policy as security for its repayment, as of all sums paid by him for the purpose of keeping the policy in force, and for such decree as may be in conformity to this opinion ; and it is

*So ordered.*

MR. JUSTICE BRADLEY. I dissent from so much of the opinion in this case as holds that the act of Congress relating

to the admission of parties to testify in the courts of the United States applies to the courts of the District of Columbia. The act relating to that subject in reference to judicial proceedings in the District covers the whole subject, and excludes the operation of any general law unless the latter is made specially applicable. The practice of admitting colored persons to testify prevailed in the District courts from the organization of the present Supreme Court of the District, and did not need the aid of the general statute. The admission of parties to testify in the courts of the District was provided for in a distinct and separate statute relating to the District alone.

I concur in the judgment of the court notwithstanding the evidence of the defendant.