## ARMSTRONG, Adm'x, *v.* MUT. LIFE INS. Co.

*(Circuit Court, E. D. New York. May 19, 1882.)*

**1. INSURANCE—LIFE POLICY—ASSIGNMENT.**

A general assignment of all insurance policies, where the assignor has some which are assignable and some not, will not carry those not assignable, nor such as would be made void by assignment.

**2. SAME—WHAT PASSES BY ASSIGNMENT—INSURANCE POLICY.**

The general words of an assignment are restrained by the particular words creating the subject of the assignment. The rights acquired under an assignment of a life insurance policy cannot extend beyond the interest in the life of the assured, and if that interest is that of a creditor, it is limited by the amount of his probable debt; and where no debt is shown, nothing is shown to have passed to the assignee.

*Herbert T. Ketcham,* for plaintiff.

*Joseph H. Choate* and *Prescott Hall Butler,* for defendant.

WHEELER, D. J. This is an action of *assumpsit* upon a policy of insurance issued by the defendant upon the life of John M. Armstrong, the plaintiff's intestate, and has now, after verdict for the plaintiff and before judgment, been heard upon a motion of the defendant for a new trial in review of questions of law.

The policy was issued upon an application signed by Armstrong, and in its operative and material parts in question ran:

"The Mutual Life Insurance Company of New York, * * * in consideration of the application for this policy of insurance, * * * which * * * every person accepting or acquiring any interest in this contract * * * warrants * * * to be the only statements upon which this contract is made, and * * * of the payment * * * at the date hereof, * * * and of the payment * * * to be made * * * during the continuance of this contract, does promise to, pay to John M. Armstrong, of Philadelphia, Pennsylvania, his assigns, on the eighth day of December, in the year 1897, the sum of $10,000, * * * at the office of the company in the city of New York, or, if he should die before that time, then to make said payment to his legal representatives. * * * If any statement made in the application for this policy be in any respect untrue, the consideration of this contract shall be deemed to have failed, and the company shall be without liability under it. * * * The contract between the parties hereto is completely set forth in this policy, and the application therefor, taken together. * * * If any claim be made under an assignment, proof of interest to the extent of the claim will be required."

Armstrong executed an assignment of the policy to Benjamin Hunter and left it with the company, and both were delivered by the company to Hunter. Armstrong died; and from the evidence received and that offered it is to be taken that he died by the hand of Hunter, who planned his death before the insurance, induced him to effect it and make the assignment, paid the first and only premium that was paid, and took his life for the purpose of obtaining the money on this and other policies. They were not related in any way, and no evidence was introduced or offered of any interest in fact which Hunter had in the life of Armstrong. The second defence set out in the defendant's pleadings alleges that Hunter, "being or pretending to be a creditor" of Armstrong, did so and so, and the defendant offered evidence to prove the facts set forth in that defence, without offering to prove that he was a creditor any more than that he pretended to be; and this was not understood to be, and is not now understood to have been, any offer to prove any fact of indebtedness or other interest. The defendant requested the court to instruct the jury that if the company made no contract with Armstrong, or if the real contract was between the company and Hunter, or if the policy was in fact made and issued for the benefit of Hunter, the plaintiff could not recover. These instructions were not given, and no question was submitted to the jury upon those aspects of the case. The principal questions are whether the facts stated would defeat the plaintiff's recovery, and whether these instructions ought to have been given.

There is no evidence in the case of any intent to defraud or want of good faith on the part of Armstrong, and none was offered to be shown, nor any claim made that there was such. The misconduct and criminality relied upon for defence were wholly on the part of Hunter, and Armstrong was only his victim. The first two of these instructions could not be given without submitting to the jury questions of contradiction or variation of the policy, which would be a subversion of one of the most important principles of the law of evidence relating to the effect of written contracts, that parol proof is not admissible to alter, contradict, enlarge, or vary them; and not only would violate the ordinary presumption of law that the stipulations of the parties are written down in such contracts as finally settled upon and intended, but also the express provisions of this contract that the whole contract and its inducing statements are contained in itself. The other request would submit the effect of the contract and assignment to the jury, when such construction, when the facts to which the instruments apply are ascertained, is always for the court. The whole of this part of the case must depend upon the true legal effect of these contracts. The defendant promised Armstrong to pay his legal representatives $10,000 if he should die before December 8, 1897. He did die before that day. The term "representatives" or "legal representatives" — which is the same thing, for none but legal would be intended—indicates the administrators. *Wason* v. *Colburn*, 99 Mass. 342.

The plaintiff is the administrator in Pennsylvania, the place of the domicile, and in New York, the place of the contract, although some question was made about the effect of the letters in the latter place. She has brought this suit upon this contract, and upon these facts is entitled to recover, unless something further is shown to defeat it. If he parted with his contract to Hunter, so that his life was insured to Hunter, and to Hunter only, from the issuing of the policy to the day named, it is plain that no one could recover for this death. Not Hunter, for he criminally caused the death, and could become entitled to nothing by his crime. Not the administratrix, for she would have nothing to recover upon, and could acquire nothing from Hunter, for he could confer no greater right than he had. The contract was with Armstrong, and ran to his representatives who would be included in him; so it was doubtless at his disposal. So the question is whether he did dispose of it to Hunter. The payment of the premium by Hunter would not make the insurance his. *Triston* v. *Hardey*, 14 Beav. 232; *Ætna Life Ins. Co.* v. *France*, 94 U. S. 561.

The question must turn upon the construction of the written instruments. Choses in action were not assignable at common law, although for a valuable consideration paid they were assignable in equity. Bouv. Bac. Abr. "Assignment, D;" "Obligation, A;" *Winchester* v. *Hackley*, 2 Cranch, 342. There is, however, no cause of action accrued upon a policy of life insurance until the death insured against happens. Still there is no question but that the accruing right may, with the consent of the insurer, be transferred, so that when it does accrue it will accrue to the assignee, and become a right of action in his favor. Nor but that before it accrues it may be so assigned as to make the assignee an appointee to receive the funds. *Page* v. *Burnstine*, 102 U. S. 664. Nor but that after it has accrued it may be assigned in equity like other rights of action not made negotiable in terms. These limitations do not apply to contracts made negotiable in terms, like notes or bonds payable to the bearer or to the order of a payee named. These policies commonly run to some person, and his or her executors, administrators, and assigns. There are many cases in which they have been held to be assignable, but stress is laid upon that form.

In *New York Life Ins. Co.* v. *Flack*, 8 Md. 341, (1 Bigelow, Ins. Cas. 146,) *Le Grand*, C. J., laid stress upon the word "assigns." In *Pomeroy* v. *Manhattan Life Ins. Co.* 40 Ill. 398, *Walker*, C. J. said: "The policy declares in terms that it is assignable. It provides for the payment of the money to the assured or to her assigns. So far, then, from such an instrument being prohibited, it is authorized by the terms of the policy." In *Mutual Protection Ins. Co.* v. *Hamilton*, 5 Sneed, 269, *McKinney*, J., said: "By the terms of the policy the contract is with the assured, his personal representatives and assigns, and the promise in fact and in law is to pay the money to the personal representatives or the assignee, as the case may be." And in *Emerick* v. *Coakley*, 35 Md. 188, *Grayson*, J., said: "So far from an assignment being prohibited by the terms of this policy, the amount of the insurance is made payable to her and her assigns." In *Koshkonong* v. *Burton*, supreme court of the United States, Chicago Legal News, April 29, 1882, the expression of opinion whether the phrases payable to the order of some person, or payable to some person or his order, would in a statute include a contract payable to a railroad company or its assigns, was expressly waived in the opinion of the court by Mr. Justice Harlan.

A general assignment of all insurance policies, where the assignor has some which are assignable and some not, will not carry those

not assignable, nor such as would be made void by assignment. *Lazarus* v. *Commonwealth Ins. Co.* 19 Pick. 81. This assignment is to be looked at in the light of these principles. One branch of the contract ran to Armstrong and his assigns, the other to his representatives. One was by its terms assignable and the other not, and by general words he assigned. The two expressions stand side by side in the instrument, so that their difference is apparent. According to these principles it would seem to follow that the assignment was intended to carry the branch made to be carried, and not the branch not so made; that the general words of the assignment are restrained by the particular words creating the subject of the assignment. The assignment could not rise higher than the instrument assigned. And further, the instrument itself limits the rights to be passed to assignees. Such right could not extend beyond an interest in the life of the assured which could be proved. If the interest was that of a creditor, it would be limited by the amount of his probable debt. *Cammack* v. *Lewis*, 15 Wall. 643; *Thatch* v. *Metropole Ins. Co.* 11 Fed. Rep. 29. As no debt is shown no interest is shown, and nothing is shown to have passed to the assignee. What did not pass to the assignee was left in Armstrong, and accrued to his representative, the plaintiff. As Armstrong was innocent no right of his, or of those claiming through him, would be cut off by the wickedness of Hunter.

Other questions were saved by exceptions taken at the trial and allowed, but they have not been argued or relied upon in this hearing.

The motion is overruled. Judgment is ordered upon the verdict, and the stay of proceedings is vacated.

*See Warnock* v. *Davis*, notes of cases, *ante*, 527.