## CONDITIONAL ASSIGNMENT OF LIFE INSURANCE.

Superior Court of Cincinnati.

THE POSTAL LIFE INSURANCE COMPANY v. HORACE W. HARMEYER
AND CARRIE SCHMIDT, ADMINISTRATRIX OF ADOLPH
F. SCHMIDT, DECEASED.*

Decided, December 17, 1913.

*Life Insurance—Unwarranted Steps to Compel Payment of Proceeds of
Policy to One Holding a Conditional Assignment—Relief in Equity
Denied.*

1. When a party comes into a court of equity seeking relief which can
   only be granted by a court of equity it must appear that he has
   acted equitably with refernece to the matter which he has brought
   into court; and if he has not, he will be relegated to such remedies
   as he may have at law.
2. Where it appears that the assignee of an insurance policy has by
   misstatements and unwarranted attacks upon the insurer com-
   pelled it to pay the proceeds of the policy into court and to inter-
   plead several defendants, the assignee can not take advantage of
   his position and disregard a provision of the policy which would
   bar him from recovery in a suit against the company itself.

*Thos. L. Michie,* for Harmeyer.
*Frank H. Kunkel,* for Carrie Schmidt, administratrix.

OPPENHEIMER, J.

On April 27th, 1896, the Provident Savings Life Assurance
Society of New York issued its policy of insurance in the sum
of $5,000 upon the life of Adolph F. Schmidt. The policy
contained the following condition:

"Any assignment of this policy must be in writing, and a
duplicate thereof must be furnished the society. Any claim
arising under an assignment shall be subject to satisfactory proof
of insurable interest existing at the death of the insured, or at
the date of such claim if prior thereto, and the society shall

---

* Motion to dismiss appeal sustained, *Postal Life Insurance Co.* v. *Har-
   meyer,* 19 C.C.(N.S.), —; judgment affirmed, *Harmeyer* v. *Insur-
   ance Co.,* 19 C.C.(N.S.), —.

be liable to the assignee to the extent of that interest only; but the society will not assume 'any responsibility for the validity of an assignment.''

The policy was payable to the estate of the insured. The annual premium of $88.80 was paid by the insured from April, 1896, until April, 1910, when the policy was assigned to Horace W. Harmeyer by a contract which reads as follows:

''For value received I hereby assign and transfer unto Horace W. Harmeyer, No. 519 Main street, Room 208, Lincoln Inn Court, in the city of Cincinnati, State of Ohio, Policy of Insurance No. 76203 issued by the Provident Savings Life Assurance Society of New York upon the life of Adolph F. Schmidt of Cincinnati, Ohio, and duly reinsured in the Postal Life Insurance Company, all dividends, benefits and advantages to be had or derived therefrom, subject to the conditions of the said policy and to the rules and regulations of the company, and subject and subordinate to any indebtedness to the company.

''*It is expressly agreed* that before any payment shall be made by virtue of this assignment, satisfactory proofs of the insurable interest of the assignee shall be furnished to the company, and the company shall not be liable for any sum in excess of such insurable interest.

''Witness my hand and seal, at Cincinnati, Ohio, this 22nd day of April, 1911.

                    '' (Signed)    ADOLPH F. SCHMIDT.''

By a supplementary agreement on the reverse side of the aforementioned assignment, the insured endeavored to have Horace W. Harmeyer designated as beneficiary under said policy, but the company refused to allow this to be done as Harmeyer had no insurable interest in the life of the insured. It is admitted by Harmeyer, and his correspondence corroborates this, that at the time when he received the policy from Schmidt he had absolutely no insurable interest in Schmidt's life, and Schmidt was not indebted to him in any sum whatsoever. He took the policy merely because, in his opinion, Schmidt was unwise in discontinuing it, and it was a profitable speculation for him to continue it in force.

The premiums on the policy, after the date of said assignment, were paid by Harmeyer until April of the present year, as was

also the interest on a loan of $485, which the insured had obtained from the company on said policy while it was still in his possession.  On July 26th, 1913, Adolph Schmidt died leaving a widow, Carrie Schmidt, who has since qualified as administratrix of his estate in the probate court of this county, and one minor child.  Immediately after the death of the insured, Harmeyer presented his claim and furnished proofs of death to the Postal Life Insurance Company.  The company requested him to furnish some evidence of his insurable interest, stating that, as he held only a conditional assignment, it was necessary for him to indicate either that he had such insurable interest, or that the decedent had been indebted to him in an amount equal to or greater than the amount due under the policy.  A great deal of correspondence between the company and Harmeyer ensued, which, on Harmeyer's part, is in the opinion of the court decidedly unique.  It consists largely of a refusal to comply with the request of the company, and of abuse of the company itself and of others whose names were not in any way involved in the transaction.  The request made by the company was designated as "ridiculous," the names appended to communications from the company were burlesqued and corrupted, and the solvency of the company was attacked.  Despite the assurance of the company that its delay in payment was due only to Harmeyer's refusal to furnish the necessary proofs and affidavits, and despite its assurance that the claim would be paid forthwith upon the furnishing of a release from the administratrix of the decedent's estate, or necessary proofs of insurable interest, Harmeyer resorted to every possible method to embarrass the company and to force it to pay the money to him despite the propriety of the requests which had been made of him.  He wrote to the superintendent of insurance for the state of New York alleging that he had complied with every requirement of the company, but that it had entirely ignored his communications, and declined to pay his claim, and accusing officials of the company of being tricksters who were purposely withholding payment from him.  He also wrote to the post office inspector accusing defendants of using the mails with intent to defraud and alleging that stories were in circulation that the

company was totally insolvent and that it was its practice to refuse the payment of claims. In addition thereto he inserted advertisements in the local newspapers alleging that the company had unjustly refused to pay his claim, and that he would be glad to hear from others who had similar claims against the company which had not been paid.

During all this time the company wrote letters, which were decidedly moderate in tone, reiterating its previous statements and assuring Harmeyer that his claim would be paid as soon as he had complied with its reasonable demands, but that until he did so, it could not pay his claim without subjecting itself to a liability to Schmidt's estate upon the same policy; but as a result of the unjust and improper publicity which Harmeyer was giving it, the company filed this suit interpleading Harmeyer and the administratrix of Schmidt's estate and paid the money into court and was discharged from all liability. It is Harmeyer's contention that under the law of this state the assignee of a life insurance policy is not required to have an insurable interest in the life of his assignor; therefore the company's request was unreasonble and improper, and he was justified in taking such steps as he saw fit in order to force the company to pay the money to him. This claim is by no means supported by the authorities. It is true that in a majority of jurisdictions the assignment of a life insurance policy to one having no insurable interest, where the assignment is not made by way of cover for a wager policy, is permissible. This rule obtains in this state (*Eckel* v. *Renner,* 41 O. S., 232, approved and followed in *Keckly et al* v. *Coshocton Glass Company,* 86 O. S., 213). The rule also obtains in Arkansas, Connecticut, Illinois, Indiana, Iowa, Massachusetts, Mississippi, Maryland, Michigan, Nebraska, New Hampshire, New York, Rhode Island, South Carolina, Tennessee, Wisconsin and Vermont. The Supreme Court of the United States at first denied the validity of such assignments (*Cammack* v. *Lewis,* 15 Wallace, 643; *Warnock* v. *Davis,* 104 U. S., 775). But it is since held that such assignment is valid, and now seems to be in accord with the weight of authority. *Insurance Company* v. *Armstrong,* 117 U. S., 591.

But this rule is subject to the limitation that there be an absence of prohibitory legislation, and that there be no contract stipulation to the contrary. If there be such stipulation, the assignment will not be binding as between the company and the assignee, in the event of a suit upon the policy (*Eckel* v. *Renner, supra; Page* v. *Burnstine,* 102 U. S., 664; *Insurance Company* v. *Insurance Company,* 81 Alabama. 329; *Insurance Company* v. *O'Brien,* 92 Michigan, 584). It is therefore manifest in our opinion, that if this were an action brought by Harmeyer against the company no recovery could be had.

Harmeyer, however, contends that as this provision of the policy was manifestly inserted for the benefit of the company, it has waived its right by paying the money into court and interpleading himself and the executrix of the decedent's estate, and that as between himself and the representative of that estate the assignment is valid, and he is therefore entitled to the fund now in the hands of the court.

This is a common law or equitable interpleader, and the case is submitted to the court as an equitable proceeding, and the court sits for the purpose of doing equity between the parties. It is trite law that one who invokes the powers of a court of equity must himself come into court under circumstances which indicate that he is, with reference to the matter in litigation, entitled to the assistance of the court; that with reference to the matter in controversy he has himself acted properly and with due regard to the rights of others. It is manifest from a perusal of the correspondence in this case that Harmeyer has from the very beginning acted in a grossly unconscionable manner, and has by his misstatements and reprehensible conduct placed the company in a position in which, in self-defense, it had no choice excepting to pay the money into court and thus compel him to look to the court for a determination of his rights. Were we to grant him the relief for which he prays, we would necessarily be sanctioning his conduct and permitting him to take advantage of his own improper acts. We are therefore of the opinion that Harmeyer has by his conduct disentitled himself to the assistance of a court of equity, and that his cross-petition in interpleader must therefore be dismissed, and he must be relegated to such right of action as he may have at law.