## GENERAL INV. CO. v. LAKE SHORE & M. S. RY. CO. et al.

### (Circuit Court of Appeals, Sixth Circuit.    December 8, 1920.)

### No. 3425.

1. **Monopolies ⚫≡⟶24(1)—Private suit cannot be maintained under Sherman Act to restrain illegal combination.**

 Anti-Trust Act July 2, 1890, § 4 (Comp. St. § 8823), limits suits to enjoin violations to those brought by the government, and does not authorize a stockholder to maintain a suit to restrain his corporation from consolidating with another on the ground that it would be an illegal combination under the act

2. **Courts ⚫≡⟶489(8)—Clayton Act does not give state courts jurisdiction to enjoin violations; "courts of United States."**

 Clayton Act, § 16 (Comp. St. § 8835g), vesting "any court of the United States having jurisdiction over the parties" with jurisdiction to grant injunctive relief to any person, firm, or corporation against threatened loss or damage by violation of the anti-trust laws, does not confer such jurisdiction on state courts.

 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Courts of the United States.]

3. **Removal of causes ⚫≡⟶111—Jurisdiction on removal dependent on that of state court.**

 Where a state court is without jurisdiction of the subject-matter of a suit, a federal court does not acquire jurisdiction by removal, although it would have had original jurisdiction.

4. **Railroads ⚫≡⟶144(2)—Bill by stockholder to enjoin consolidation insufficient.**

 A bill to restrain consolidation of two railroad companies on the general ground that it would be a violation of the constitutions, statutes, and public policy of the states concerned, filed by the holder of a fraction of 1 per cent. of the stock of one of the companies, purchased after the consolidation agreement was made, *held* not to state ground for equitable relief, where no objection to the consolidation is made by state authorities, and there is no allegation showing that complainant would suffer injury by depreciation of the value of its stock.

5. **Appeal and error ⚫≡⟶1194(2)—Questions concluded on reversal.**

 Where a decree dismissing a suit is reversed on appeal, and the case remanded for further action, only the questions which were considered and determined by the appellate court are concluded by its decision.

6. **Removal of causes ⚫≡⟶111—Jurisdiction acquired continues for all purposes.**

 Where a cause was removable on the ground that the case as made by the bill was one arising under the laws of the United States, jurisdiction of the federal court, acquired by the removal, continues for all purposes.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the General Investment Company against the Lake Shore & Michigan Southern Railway Company and another. Decree for defendants, and complainant appeals. Affirmed.

See, also, 250 Fed. 160, 162 C. C. A. 296.

F. A. Henry, of Cleveland, Ohio, and Elijah N. Zoline, of New York City (Snyder, Henry, Thomsen, Ford & Seagrave, of Cleveland, Ohio, on the brief), for appellant.

Walter C. Noyes, of New York City, and S. H. West, of Cleveland, Ohio (Robert J. Cary, of New York City, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The General Investment Company filed a bill to enjoin the consolidation of the Lake Shore and the New York Central Railroads. The District Court dismissed the bill, because jurisdiction was not acquired over the New York Central, and that was thought essential to the object of the suit. On appeal to this court, we affirmed the conclusion as to the lack of jurisdiction over the New York Central; but we thought that some of the relief prayed might, in a proper case, be granted against the Lake Shore alone, and that, to that extent, the New York Central was not an indispensable party. Accordingly, we reversed the dismissal and sent the case back for further proceedings in accordance with the opinion. This is reported in 250 Fed. 160, 162 C. C. A. 296, and to that opinion we refer for a fuller statement of the essential facts.

After the remand, the bill of complaint was amended, so as to show that plaintiff's purchase of its five shares of stock in the Lake Shore was not, in fact, made until after the directors' consolidation agreement had been executed. Thereupon the defendant filed a further motion, in which it asked: (1) That the bill of complaint be dismissed, in so far as it was founded upon the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830), and this for the reason that a private individual could not maintain such a bill; (2) that it be dismissed in so far as it was founded on the Clayton Act (38 Stat. 730), and this for the reason that the state court, in which the suit was commenced, had no jurisdiction of a case founded on the Clayton Act; (3) that in so far as it was founded on the Constitutions or statutes of the several states it be dismissed because it did not state a good cause of action. The motion to dismiss was granted, and plaintiff appeals.

[1] 1. *The Anti-Trust Act* (Act July 2, 1890).—The decision in Paine Lumber Co. v. Neal, 244 U. S. 459, 37 Sup. Ct. 718, 61 L. Ed. 1256, is clearly decisive and justifies the dismissal of this branch of the bill, unless the case may be distinguished from that, because this suit is by a stockholder and that was by a stranger. It is not correct to say that the court there decided only that such a suit could not be maintained under section 4 of the act (Comp. St. § 8823), though that happened to be the language used; that case was not brought under section 4, and the plaintiff made no claim of any right given by that section; the decision was that *that* suit could not be maintained; and the reference to "under section 4" must have been intended to express the thought that, under the effect of section 4 upon the whole act, the suit would not lie. It is now said that the effect of the Anti-Trust Act is to make a prohibited consolidation ultra vires of the corporation; that equity always had jurisdiction of a suit by a stockholder to enjoin his corporation from an ultra vires act; and hence that in such a suit as this the court of equity does not depend for its jurisdiction on the Anti-Trust Act, and the case is not one "under the act."

We are unable to see any distinction in principle, in this respect,

between a stockholder's case and the Paine Case. A stranger who was about to suffer irreparable loss from unlawful acts of another had the right to proceed in equity for an injunction against that stranger, just as much as a stockholder did against his corporation. The jurisdiction of equity does not depend on the Anti-Trust Act in the suit by the stranger any more than it does in the suit by the stockholder; in each case alike, the only important effect of that statute is to make unlawful the act sought to be enjoined. The present case is brought "under the anti-trust laws" no more and no less than was the Paine Case. It is to be noticed that, in the dissenting opinion in that case, the stockholders' cases, which had permitted the enforcement by injunction of rights dependent on the act, were approved; but the majority does not suggest that they are distinguishable, and we think that the effect of the majority opinion is to overrule them. The theory of the decision we think must be that the Anti-Trust Act declared certain rights and duties, that it intended there should arise therefrom only two remedies, a public one and a private one, each as specified, and that no other private remedy should depend thereon. Wilder Co. v. Corn Co., 236 U. S. 165, 174, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118. It seems clear enough that the point as to which Mr. Justice Holmes said he was in the minority was as to the effect of the Clayton Act upon the right to an injunction against a labor boycott. Duplex Co. v. Deering (C. C. A. 2) 252 Fed. 722, 743, 747, 164 C. C. A. 562. Holding this view of the Paine decision, it follows that the court below was right in dismissing so much of this bill as was based on the Sherman Anti-Trust Act.

[2] 2. *The Clayton Act* (Act Oct. 15, 1914).—Section 16 of this act (8835*o*, U. S. C. S.) provides that—

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damages by a violation of the anti-trust laws."

The effect of this section undoubtedly is to permit maintenance under the Sherman Anti-Trust Act of that class of suits, the right to maintain which had been denied in the Paine Case; but since the present case was commenced in a state court, and was by defendant removed to the court below, we must inquire whether this section authorized the state courts to act, and, if not, then whether the removal to the federal court makes any difference.

The grant of jurisdiction is to the "courts of the United States." This language has been expressly held not to reach even territorial courts, although they were created by the laws of the United States. McAllister v. U. S., 141 U. S. 174, 179, 11 Sup. Ct. 949, 35 L. Ed. 693. Much less can it reach those courts which are wholly of another jurisdiction. It is true there are cases where this term has been thought to reach some of the courts of the District of Columbia (see Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268; United States v. Mills, 11 App. D. C. 500, 504) ; but that was because the language and purpose of the act in question were especially appropriate to be so extended. In the present case the statute was dealing solely with a subject-matter of

exclusively federal jurisdiction, interstate commerce, and while Congress might have intrusted some of its exercise to the state courts, there is no reason to presume such an intention; the natural presumption is rather to the contrary. Not only had the ordinary meaning of the phrase "courts of the United States" become fixed by familiar judicial construction long before the Clayton Act was passed, but it had been customarily used by Congress with the same definite meaning; for example, section 256 of the Judicial Code (Comp. St. § 1233) refers to the "courts of the United States" and the "courts of the several states" as different classes, exclusive of each other. Further, this section pertains only to the remedy, and there would be a strong presumption that a federal remedial statute did not relate to the remedies of another jurisdiction. From these considerations we are satisfied that a suit brought in a state court can get no help from section 16.

[3] When the case was commenced, the state court either had or had not power to give relief because of the federal anti-trust laws. If it had not, we do not comprehend how jurisdiction of the subject-matter could have been conferred by the removal to the federal court. The jurisdictional objection was not as to the person, but as to the subject-matter. In De Lima v. Bidwell, 182 U. S. 1, 174, 21 Sup. Ct. 743, 45 L. Ed. 1041, it was said that defendant neither gains nor loses by the removal, that the case proceeds as if no such removal had taken place, and that the defendant unquestionably has the right, in the federal court, to show that the state court had no jurisdiction. While these statements were made with reference to a different situation from that here existing, we see no reason to doubt their present applicability. It follows that the court below, like the state court, had no jurisdiction of the remedy given by section 16 of the Clayton Act, and could not grant any relief upon that theory.[1]

[4] 3. *State Constitutions and Laws.*—So far as the relief prayed for was shown to stand upon the supposed violations of state Constitutions or laws, no question of jurisdiction is involved; but we must ascertain whether the bill states a good case for the relief sought. We find ourselves able to reach a conclusion upon this subject without inquiry into the ultimate question, elaborately argued by plaintiff, whether the Constitution and laws of (e. g.) Ohio prohibit such a consolidation of railroads as this was.

We first observe that, by the elimination of the New York Central and the failure to reach the Read Committee, a very large part of the allegations of the bill and of the prayers for relief have been left inoperative, and that, although the New York Central has been held not to be an indispensable party as to portions of the relief prayed, it is by no means clear just how much of the bill is left with an effective status. Certainly many of the allegations lose their force when we re-

---

[1] The status of the present controversy in its relation to the Sherman and Clayton Acts was considered by the Appellate Division, New York, and a suit like this one was dismissed. Venner v. New York Cent., 177 App. Div. 296, 164 N. Y. Supp. 626, affirmed 226 N. Y. 583, 123 N. E. 893, certiorari refused 249 U. S. 617, 39 Sup. Ct. 391, 63 L. Ed. 803.

member that we can consider no controversy to which the New York Central is an indispensable party.

We next observe that the consolidation sought to be enjoined was only a new formulation of the situation which had been existing for many years. It is expressly averred that the obnoxious control of parallel and competing lines had been accomplished, and for many years maintained, by stock ownership and control. It does not seem to be claimed that the proposed consolidation would create any restraints on competition that did not already exist. We find no definite statement that what was proposed would be obnoxious to any statute or constitutional provision which did not relate to competition between parallel lines, excepting the claim that the proposed consolidation would increase the capital stock and debts above the permitted limit. It is probable, also, from the silence of the bill, that during all these years the public authorities of the various states have rested content and have not indicated any belief that public policy was being violated, and it may likewise seemingly be inferred that no public authorities are now objecting to the proposed consolidation, but that, on the contrary, they are all content.

Further, we notice that plaintiff owns only one one-thousandth of 1 per cent. of the capital stock, that no other shareholder has accepted its invitation to join in preventing the imminent irreparable injury, and that this interest plaintiff bought after the consolidation contract was made. He seems to be a volunteer, rather than a conscript. We have, then, a case where a private suitor, with a minimum of ponderable interest, and with no disposition to beware of entrance to a quarrel, is seeking relief upon the sole ground that the public policy of the state is being violated, and where the state authorities have long acquiesced and do acquiesce in any violation there may be. Under such circumstances, the court of equity will be strict in requiring the plaintiff to point out with precision and certainty in what respects the law is about to be violated and to show, clearly and positively, substantial and irreparable injury to its private rights. A measure of imperfection in pleading that might well be overlooked in the ordinary controversy should not be disregarded in such a case as this.

When we examine the allegations of the bill with respect to the proposed consolidation, and with respect to (e. g.) the Ohio situation, we find it said to be "a violation of the public policies of the  *  *  * states of  *  *  *  Ohio  *  *  *  and of the common law of those states  *  *  *  and a violation of the various laws of  *  *  * said states aforesaid, providing against and making illegal consolidations of and the control of parallel and competing lines," etc. While, of course, this court will take judicial notice of the Constitution and laws of Ohio, yet such an allegation is thoroughly unsatisfactory as a tender of an issue, and confirms the impression, otherwise strongly produced, that the bill was intended to rest upon the federal anti-trust laws, and that the references to the state laws were by way of makeweight.

If, however, even this indefiniteness in pleading could be excused, we would come to a more vital defect: There is a statement, in words,

of irreparable injury; but that is a conclusion. There is no direct allegation of any pecuniary loss. It is not charged that plaintiff's shares of stock will be worth any less, presently or prospectively, after the consolidation than they are now, nor that they will suffer any net pecuniary injury. True, it is said that the corporation will suffer certain losses and will incur certain penalties, but this is only one side of the account. The bill shows that the stockholders, like plaintiff, will be entitled to receive five shares of the new stock for each one of the old; practically all the stockholders are approving and must regard the consolidation as a benefit; under these conditions, a bill which fails to allege that plaintiff's stock will be worth any less in dollars and cents, or in any other kind of value, now or hereafter, if the consolidation goes through, is fatally defective.

[5] 4. *Our Former Decision.*—Plaintiff insists that the questions we have discussed are not open on this appeal. It is said that, if the bill of complaint was defective for the reasons stated, the action of the trial court was right when it first dismissed the bill, although it did so upon the erroneous ground that the New York Central was an indispensable party. It is further said that upon the first appeal it was the duty of this court to affirm the order of dismissal if it was right for any reason, and that when we reversed the order of dismissal we necessarily decided that the bill of complaint was immune to a motion to dismiss for any reason.

A reference to the former record shows that the motion to dismiss, made in the court below because of lack of jurisdiction over the New York Central, also included, as one of its grounds, the claim that the bill of complaint did not state a good cause; but the opinion of the court below at that time shows that such a question was never reached or considered. When that appeal came up for hearing in this court, it was open to the appellee, the Lake Shore Company, to insist that the dismissal was right for the same reasons that are now insisted upon. The briefs then filed show that this was not done, and that no reference was made by counsel for either party to the questions we have now discussed. There is no reference to them in our opinion. So it must be conceded that the questions now said to have become res judicata, or the law of the case, by our former action, were never presented to us or considered by us; and we cannot think that questions with such a history are foreclosed to us.

It is undoubtedly true that, when an appellate court affirms a decree below, it amounts to a decision, so far as the single case is concerned, that there were no valid objections to the decree, and reaches those unmentioned as well as those discussed. Tyler v. Magwire, 84 U. S. (17 Wall.) 253, 21 L. Ed. 576. The logic of that situation does not apply, where there is a reversal. In the former case, the matter is ended, and there is nothing for further consideration. In the latter event, the case is sent back expressly for further action, and the extent to which further action is concluded depends, not on what might have been decided, but upon what was decided. It is common for an appellate court to say, when reversing, that it leaves certain questions undecided, because they have not been considered; it has not been our

understanding that upon a reversal we were deciding questions not presented or considered; and we think that is not the effect of such a reversal. Mutual Co. v. Hill, 193 U. S. 551, 553, 24 Sup. Ct. 538, 48 L. Ed. 788; Taenzer v. Chicago Co. (C. C. A. 6) 191 Fed. 543, 547, 112 C. C. A. 153.

We interpret our former opinion, and the order denying rehearing, as expressly or by necessary implication leaving open to the court below the right to consider the power to maintain the action under either the Sherman or Clayton Act; and, the decision on those points having been against plaintiff, we think it was not only within the power, but it was the duty, of the court below to consider whether a good case was made under the state laws.

[6] 5. *The Amount Involved.*—The suggestion presents itself whether there may be a duty to remand to the state court rather than dismiss the bill. Since we hold that plaintiff does not state a good case for relief arising under the laws of the United States, it might be said that jurisdiction to dispose of the merits then rests only on diverse citizenship, and that this was an insufficient basis, in the face of our holding that the bill alleges no substantial damages. In a controversy like this, the damage to plaintiff is not necessarily the only amount involved; but, if it were, this result does not follow. If the case had been originally commenced in the federal court, and the jurisdiction of that court had been invoked only on the ground that the case arose under the laws of the United States, it is settled that the court would proceed to dispose of all the questions in the case, even after it had reached the conclusion that plaintiff had failed to make out a good case on the federal question. Siler v. Louisville Co., 213 U. S. 175, 191, 29 Sup. Ct. 451, 53 L. Ed. 753. We do not see how the question is different when the case is begun in the state court and is removed. See Missouri v. Missouri Com'rs, 183 U. S. 53, 59, 22 Sup. Ct. 18, 46 L. Ed. 78. If we thought no federal question was then involved, so that the case had not been removable on that ground, we would have a different situation; but we have not reached any such conclusion as that. The case, as formulated in the bill, plainly was one arising under the laws of the United States. The removal, whether on that ground or not, brought into the federal court a case which then came to be rightly here, and jurisdiction of the case so obtained (and to the extent possessed by the state court) continues for all purposes.

The decree below should be affirmed; but, as we rest the affirmance in part upon an insufficiency of pleading, as to the state Constitutions and statutes and the damages, the affirmance will be without prejudice to the filing in a proper court of a new bill, based upon those constitutions and laws only.