Melvin E. SALVESON, an individual, and Electronic Currency Corporation, a corporation, Plaintiffs,

v.

WESTERN STATES BANKCARD ASSOCIATION, et al., Defendants.

R. C. I. A. LOCAL 1288 CREDIT UNION, et al., Plaintiffs,

v.

ALLIED FINANCE ADJUSTERS CONFERENCE, INC., et al., Defendants.

Nos. C–81–1707–WWS, C–81–3157–WWS.

United States District Court, N. D. California.

Oct. 22, 1981.

Joseph M. Alioto, Lawrence John Appel, Alioto & Alioto, San Francisco, Cal., for plaintiffs Salveson etc.

Francis O. Scarpulla, Stephen V. Scarpulla, Scarpulla & Scarpulla, Philip Paul Bowe, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiffs R.C.I.A. Local.

Lasky, Haas, Cohler & Munter, Richard Haas, R. Stewart Baird, Jr., San Francisco, Cal., for Western States Bankcard Association.

Debevoise, Plimpton, Lyons & Gates, Andrew C. Hartzell, Jr., Paul E. Konney, James A. Reaves, Adrienne Hale, Mitchell A. Karlan, New York City, and Steinhart, Falconer & Morgenstein, James T. Fousekis, Gordon P. Erspamer, San Francisco, Cal., for MasterCard International, Incorporated (formerly Interbank Card Association).

Brobeck, Phleger & Harrison, Malcolm T. Dungan, Michael B. Flesch, San Francisco, Cal., for Wells Fargo Bank.

Heller, Ehrman, White & McAuliffe, M. Laurence Popofsky, Paul Alexander, Terry E. Sikes, San Francisco, Cal., for Crocker National Bank, N. A.

Severson, Werson, Berke & Melchior, Robert L. Lofts, Steven W. Waldo, San Francisco, Cal., for United California Bank.

Pillsbury, Madison & Sutro, John B. Bates, Terrence A. Callan, James A. DiBoise, San Francisco, Cal., for Bank of California, N. A.

Broad, Khourie & Schulz, Royce H. Schulz, Timothy F. Perry, San Francisco, Cal., for Visa, Inc.

Richard E. Neuman, San Francisco, Cal., for David Kikkert & Associates, Inc., U. S. Recovery Service, Inc., Affiliated Recovery Services, National Auto Recovery Bureau, L. A. Walker Co. of California, Inc. and National Finance Adjusters, Inc.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

### A. Introduction

These actions bring before the Court issues concerning the removal from state to federal court of actions asserting antitrust claims. The increasing frequency with which these issues arise in the district court, their complexity, and the confusion which they tend to generate warrant giving them comprehensive consideration here. Although these two actions are not otherwise related, the jurisdictional issues they raise overlap and to some extent dovetail. Both cases raise the issue whether and under what circumstances an antitrust claim as-

serted in the state court presents a federal question. The Salveson case in addition raises the follow-on set of issues of how the federal court should dispose of properly removed federal and state claims. It therefore seems appropriate to consolidate the pending motions for disposition.

### B. *Factual Background*

#### 1. *The Allied Finance Adjusters Case*

Plaintiffs R.C.I.A. Local 1288 Credit Union and Hotel & Restaurant Employees and Bartender Union, Local 28, brought this action on behalf of all California credit lenders against defendant companies and associations of companies which provide repossession services to banks, credit unions, and other lenders. Plaintiffs allege that defendants engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of California's Cartwright Act (Calif. Bus. & Prof. Code §§ 16700 *et seq.* (West 1964 and Supp. 1981)) and Unfair Trade Practices Act (Calif.Bus. & Prof.Code §§ 17000 *et seq.* (West 1964 and Supp.1981)). Plaintiffs filed their complaint and first amended complaint in the San Francisco Superior Court. No federal claim was expressly pleaded. Upon receiving plaintiff R.C.I.A.'s answers to defendants' first set of interrogatories, disclosing plaintiff's reliance on federal antitrust claims asserted by the government in other actions against the same defendants as well as interstate activities by defendants, thirteen defendants filed a petition for removal to this Court, claiming that the answers disclosed the federal nature of the action, and hence its removability under 28 U.S.C. §§ 1441(a) and (b) (1976). Plaintiffs have moved to remand the action to the state court, contending that federal subject matter jurisdiction is lacking and that defendants' petition was not timely filed.[1]

#### 2. *The Salveson Case*

Plaintiffs Melvin E. Salveson and Electronic Currency Corporation filed their action in the San Francisco Superior Court against Western States Bankcard Association and several banks and other entities alleging violations of the state antitrust laws and in addition fraud, misappropriation, intentional interference, and breach of contract. Defendants removed on the basis of federal question jurisdiction, contending that the claims asserted, although pleaded under state law, were federal in nature for reasons discussed below. Plaintiffs have moved to remand. Defendants have moved to dismiss all claims pleaded in the complaint.

Two major issues are raised by these actions:

(1) Were the actions properly removed, and, if they were,

(2) What is the appropriate disposition of the properly removed federal and state claims?

### C. *Were the Actions Properly Removed?*

#### 1. *Basis for Federal Removal Jurisdiction*

Federal courts are courts of limited jurisdiction, and the authority to remove an action from state to federal court is conferred solely by statute. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). That statutory authority is found in 28 U.S.C. § 1441 (1976), which now provides in pertinent part as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without

---

**1.** In view of the disposition of the subject matter jurisdiction issue, the Court does not reach the timeliness issue.

regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The burden is on the removing party to establish federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S. 35, 66 L.Ed. 144 (1921). The removal statute is strictly construed against removal jurisdiction, doubt being resolved in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979); *Glucksman v. Columbia Broadcasting System, Inc.*, 219 F.Supp. 767, 768 (S.D.Cal. 1963). This is in accord with the Congressional policy to limit the removal jurisdiction of the federal courts. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 10, 71 S.Ct. 534, 538, 95 L.Ed. 702 (1951); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975). At the same time, courts must be cautious in denying defendants access to a federal forum since under 28 U.S.C. § 1447(d) remand orders are generally not reviewable.[2] *Folts v. City of Richmond*, 480 F.Supp. 621, 626–27 (E.D. Va.1979); *Manas y Pineiro v. Chase Manhattan Bank, N. A.*, 443 F.Supp. 418, 419 (S.D.N.Y.1978); C. Wright, Law of Federal Courts 167–68 (3d ed. 1976).

██ The existence of federal jurisdiction on removal must be determined on the face of the plaintiff's claim. *Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The controlling principles were set forth by Justice Cardozo in *Gully v. First National Bank In Meridian*:

> To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or

immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.

299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936) (citations omitted). The rationale behind these principles is the well established rule that plaintiff is master of his claim, and may choose what law to rely on. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), *accord, Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 662–63, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961); *Sheeran v. General Electric Co.*, 593 F.2d 93, 96 (9th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). "[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case ... when it is commenced," and whether a case is removable depends "solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case." *Great Northern Railway v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 240, 62 L.Ed. 713 (1918). As Professor Moore has stated, "where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." 1A Moore's Federal Practice ¶ 0.160, at 185 (2d ed. 1979); *accord, Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir. 1981); *La Chemise Lacoste v. Alligator Co.*, *supra*, 506 F.2d 346; *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, 511 F.Supp. 1180, 1184 (S.D.N.Y.1981); *State of Connecticut v. Levi Strauss & Co.*, 471 F.Supp. 363, 366

---

2. *But see Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), holding that 28 U.S.C. § 1447(d) does not prevent review by writ of mandamus of a remand order issued on grounds not authorized by statute. 28 U.S.C. § 1447(c) (1976). *See also* note 17, *infra*.

(D.Conn.1979); *Fischer v. Holiday Inn of Rhinelander, Inc.*, 375 F.Supp. 1351, 1354 (W.D.Wis.1973); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3722, at 564–69 (1976).

An exception to the rule limiting the court's examination to the face of the complaint arises in cases in which plaintiff seeks to conceal the federal nature of his claim by fraud or obfuscation. Although the court is not free to second-guess the plaintiff's chosen form of pleading, it is entitled to assure itself that the plaintiff has not by "artful pleading" sought to defeat defendant's right to a federal forum. *Federated Department Stores, Inc. v. Moitie*, —— U.S. ——, 101 S.Ct. 2424, 2427 n.2, 69 L.Ed.2d 103 (1981); *see* 14 Wright, Miller & Cooper, *supra*, § 3722, at 564. In those circumstances, it is proper for the court to examine the record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary. *City of Galveston v. International Organization of Masters, Mates, & Pilots*, 338 F.Supp. 907, 909 (S.D.Tex.1972); *see Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir. 1980).

The cases in which the issue of federal question removal jurisdiction arises fall generally into one of three categories:

(1) Where the federal statute is enforceable exclusively in the federal courts and Congress has preempted the subject matter of the statute, barring state legislation.

(2) Where the federal statute is enforceable exclusively in the federal courts but Congress has not preempted the subject matter, leaving states free to enact and enforce their own legislation.

(3) Where the federal statute is enforceable in both state and federal courts.

In making the determination whether the claim asserted in the state court should be treated as a removable federal law claim, the analysis necessarily differs depending on which of the above three categories is involved. Defendants' memoranda ignore the distinctions which the differences in the underlying substantive law create; as a result their citations and arguments are largely beside the point.[3]

■ Thus if the subject matter of the claim has been preempted, there is no room for the assertion of a claim under state law. Once the claim has been identified as relating to the federal subject matter, federal jurisdiction is established regardless of how plaintiff has pleaded.[4] At the other ex-

---

**3.** In this connection, defendants in the Allied Finance Adjustors case cite *La Chemise Lacoste v. Alligator Co.*, 313 F.Supp. 915 (D.Del. 1970), which was overruled on the very issue for which it was cited. 506 F.2d 339 (3rd Cir. 1974).

**4.** *See, e. g., Johnson v. England*, 356 F.2d 44, 47–48 (9th Cir.), *cert. denied*, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966), holding that an action ostensibly seeking arbitration under a collective bargaining agreement pursuant to state law was in fact an action for violation of the agreement under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)) implicating federal labor law which preempts state law. *See also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (action for violation of collective bargaining agreement removable, although Section 301 not pleaded, because state law was preempted); *Sheeran v. General Elec. Co.*, 593 F.2d 93, 96 (9th Cir. 1979) (same); *American Synthetic Rubber Corp. v. Louisville & N.R.R.*, 422 F.2d 462 (6th Cir. 1970) (state court action for negligent delivery of goods held removable under Carmack Amendment to the Interstate Com-

merce Act, 49 U.S.C. § 20(11)); *Bailey v. First Federal Savings & Loan Ass'n of Ottawa*, 467 F.Supp. 1139 (C.D.Ill.1979) (Home Owner's Loan Act, 12 U.S.C. § 1461 *et seq.* held to preempt regulation of lending practices of federally insured savings and loan associations); *New York v. Local 144, Hotel, Nurs. Home & Allied Health Serv. Union*, 410 F.Supp. 225 (S.D.N.Y.1976) (1974 amendments to the National Labor Relations Act, 29 U.S.C. §§ 152, 152(14), 158(g), and 183 relating to strikes against providers of health care preempt state law).

There is a conflict in the cases whether federal preemption alone is a sufficient basis for removal. Some authorities argue that federal preemption is a defense to a state law claim and therefore cannot be the basis for finding federal subject matter jurisdiction on removal. *See Billy Jack For Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers' Union*, 511 F.Supp. 1180, 1185 & n.7, 1186 & n.8 (S.D. N.Y.1981) (citing cases) and *Marquette Nat. Bank v. First Nat'l Bank of Omaha*, 422 F.Supp. 1346, 1352–53 (D.Minn.1976) (citing cases). It is unclear which rationale this circuit follows.

treme, where Congress has provided for concurrent jurisdiction in state and federal courts, the claim may be asserted in either court and removal on the basis of federal question jurisdiction is precluded.[5] It is the cases falling into the second category, where the federal statute is enforceable in federal court but the states are not preempted from regulating the subject matter locally which are the primary source of difficulty and confusion. Among these cases are those arising under the antitrust laws, which are discussed in the following section.

### 2. Jurisdiction Over State Law Antitrust Claims

In the antitrust area Congress has never expressed a clear and manifest purpose to supersede the historic police powers of the states, see Jones v. Rath Packing Co., 430

U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), nor has it taken action which would achieve that purpose by clear implication. See Cloverleaf Co. v. Patterson, 315 U.S. 148, 157, 62 S.Ct. 491, 496, 86 L.Ed. 754 (1942).[6] The Supreme Court, although never having ruled squarely on the issue, has been reluctant to find preemption and has generally deferred to state laws in this area. See Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 495, 69 S.Ct. 684, 687, 93 L.Ed. 834 (1949); Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). Despite the broad reach of the federal commerce power, state antitrust laws retain vitality in dealing with matters which, while having interstate aspects, significantly affect local interests. Younger v. Jensen, 26 Cal.3d 397, 405, 161 Cal.Rptr. 905, 910, 605 P.2d 813 (1980). See Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America, 438 F.2d 1286,

Compare Washington v. American League of Prof. Baseball Clubs, 460 F.2d 654, 660 (9th Cir. 1972) with Fristoe v. Reynolds Metals Co., supra. See also Connecticut v. Levi Strauss & Co., 471 F.Supp. 363, 366–69 (D.Conn.1979).

5. See, e. g., Long v. District of Columbia, 469 F.2d 927, 937 (D.C.Cir.1972) (state and federal courts have concurrent jurisdiction over civil rights actions brought under 42 U.S.C. § 1983); 45 U.S.C. § 56 (1976) and 28 U.S.C. § 1445 (Supp. III 1979) (concurrent jurisdiction under Federal Employers' Liability Act); See Wright, Law of Federal Courts, supra, § 38, at 151–52.

6. A statement by Senator Sherman urging passage of the Sherman Act suggests the absence of an intention to preempt state laws:

This bill ... has for its single object to invoke the aid of the courts of the United States to deal with the combinations ... when they affect injuriously our foreign and interstate commerce ... and in this way to supplement the enforcement of the established rules of the common and statute law by the courts of the several States .... It is to arm the Federal courts within the limits of their constitutional power *that they may cooperate with the State courts* in checking, curbing, and controlling the most dangerous combinations that now threaten the business, property, and trade of the people of the United States. 21 Cong.Rec. 2457 (1890) (emphasis added).

7. Inasmuch as the cases before the Court involve only charges of conventional anticompetitive activity, such as price fixing and monopolization, it is not necessary to consider the

federal constitutional and statutory limits on state antitrust regulation. The Supreme Court has yet to define these limits. The Court has, however, upheld the application of state antitrust laws to situations that at least arguably involved interstate commerce. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949); Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937); Standard Oil of Kentucky v. Tennessee, 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1910). But see Flood v. Kuhn, 443 F.2d 264, 266–68 (2d Cir. 1971), aff'd, 407 U.S. 258, 284, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 728 (1972). See generally Rubin, Rethinking State Antitrust Enforcement, 26 U.Fla.L.Rev. 653 (1974). The Court's apparent indifference to the enforcement of state antitrust laws with respect to activities affecting interstate commerce indicates its permissive attitude toward state antitrust regulation. "[A]lthough the Sherman Act was enacted 87 years ago, no state antitrust statute has ever been declared unconstitutional for being in conflict with it." State v. Lawn King, Inc., 150 N.J.Super. 204, 375 A.2d 295, 301 (1977), rev'd on other grounds, 404 A.2d 1215, 169 N.J.Super. 346 (App.Div.1979), aff'd, 84 N.J. 179, 417 A.2d 1025 (1980). Of course, some state antitrust statutes are limited on their face or by state judicial interpretation to intrastate commerce and therefore do not reach interstate activities. Cf. In re Wiring Device Antitrust Litigation, 498 F.Supp. 79 (E.D.N.Y.1980) (South Carolina antitrust law limited to intrastate activity), discussed below.

1313 (5th Cir. 1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972).[7] In particular, the Cartwright Act has been expressly held by California courts to apply to transactions in interstate commerce. *Younger v. Jensen, supra; R. E. Spriggs Co. v. Adolph Coors Co.,* 37 Cal.App.3d 653, 112 Cal.Rptr. 585 (2d Dist. 1974).

▆▆▆ Thus, unlike other federal statutory schemes that preempt state regulation, the federal antitrust laws do not impinge on the jurisdiction of state courts to adjudicate claims asserted under state antitrust laws. Federal jurisdiction does not exist, therefore, simply because the subject matter of the action could give rise to a federal law claim as well as a state law claim. Plaintiff is normally free to ground his claim on available state law and ignore federal law. *See* cases cited at p. 571, *supra,* and *Federated Department Stores, Inc. v. Moitie, supra,* 101 S.Ct. 2431–33 (Brennan, J., dissenting). By avoiding allegations which "afford a basis for federal jurisdiction," plaintiff may defeat removal, *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir. 1976), *Sheeran v. General Electric Co., supra,* 593 F.2d 96, unless one of the following conditions is established:

(1) Diversity of citizenship exists, making the action removable regardless of whether a federal question is presented. 28 U.S.C. §§ 1332, 1441; *see Goldberg v. CPC International, Inc.,* 495 F.Supp. 233 (N.D.Cal. 1980); *see generally* 14 Wright, Miller & Cooper, *supra,* § 3723.

(2) The claim, although ostensibly asserted under state law, is in fact a federal law claim but by artful pleading is misrepresented in order to defeat defendant's right to a federal forum. *Federated Department Stores, Inc. v. Moitie, supra,* —— U.S. ——, 101 S.Ct. 2424, 69 L.Ed.2d 103.

### 3. *The Artful Pleading Doctrine*

▆▆▆ The artful pleading doctrine has its principal application in cases in which Congress has preempted authority over the subject matter but plaintiff seeks to avoid the effect of preemption by attempting to plead a state cause of action. As the court stated in *Hearst Corp. v. Shopping Center Network,* 307 F.Supp. 551 (S.D.N.Y.1969), in which defendants contended that plaintiff's purported state law claim was actually for federal copyright infringement:

True it is that, where the plaintiff has a right to relief *either* under federal law *or* under state law as an independent source of that right, the federal court on removal proceedings may not generally look beyond the face of the initial pleading in the state action to determine whether a federal question is presented. . . . In certain areas, however, this either-or option is no longer available, for Congress has deemed that federal substantive law should altogether preempt and supplant state law. In such a case, where Congress has explicitly said that the exclusive source of a plaintiff's right to relief is to be federal law, it would be unacceptable to permit that very plaintiff, by the artful manipulation of the terms of a complaint, to defeat a clearly enunciated congressional objective.

307 F.Supp. at 556 (citations omitted) (emphasis in original). Indeed, some courts have indicated that in the absence of federal preemption, a federal court on removal cannot look beyond the plaintiff's pleadings to determine if artful pleading has occurred. *See Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162, 1170 (C.D. Cal.1980); *Ashley v. Southwestern Bell Tel.Co.,* 410 F.Supp. 1389, 1393 (W.D.Tex. 1976); *Coditron Corp. v. AFA Protective Systems, Inc.,* 392 F.Supp. 158, 160 (S.D.N. Y.1975); *Fischer v. Holiday Inn of Rhinelander,* 375 F.Supp. 1351, 1354 (W.D.Wis. 1973), *see also Federated Department Stores, Inc. v. Moitie, supra,* 101 S.Ct. at 2432–33 (Brennan, J., dissenting).

Other decisions, however, establish that a court may properly look beyond the pleadings to determine whether the claim asserted under guise of state law is actually a federal claim. *See Federated Department Stores, Inc. v. Moitie, supra; Vitarroz Corp. v. Borden, Inc., supra,* 644 F.2d at 964, *and* cases cited at p. 572, *supra.* In doing so,

the court is not free to recharacterize plaintiff's complaint or to implement policies, such as coordination with pending multidistrict litigation, which, though desirable, lie beyond the scope of the removal statute. It is limited to taking action necessary to protect federal jurisdiction and the defendant's right to a federal forum.

The antitrust decisions which bear on the artful pleading doctrine, although they have not necessarily fully considered its jurisdictional underpinnings, suggest two principal contexts for application of the doctrine.

In the first type of situation plaintiff has previously asserted substantially the same claim as a federal antitrust claim. That was the situation in *Moitie*, where several private antitrust actions, including one brought by Brown, had originally been filed in federal court and were dismissed for lack of standing. All of these plaintiffs appealed—except Brown, who chose instead to file a complaint in the state court, alleging state law claims based on the same facts. Brown's action was removed on the basis of federal question jurisdiction, his motion to remand was denied, and the action was dismissed on the ground of res judicata.

In the Supreme Court the issue was whether the dismissal of the Brown action should have been set aside, inasmuch as the dismissals of the other five actions, which had been appealed, had been reversed on the authority of the later decision in *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (holding that consumers have standing under the Clayton Act). The Supreme Court held the Brown action to be barred by res judicata even though as a result Brown would be denied the benefit of the Ninth Circuit's reversal of the companion cases.

Because the Supreme Court treated the case as one presenting primarily a res judicata rather than a jurisdictional issue, the latter issue was relegated to a footnote. In that note, the Court agreed with the court of appeals in affirming the district court's ruling that the Brown action had been properly removed from the state court because "at least some of his claims had a sufficient Federal character to support removal." 101 S.Ct. at 2427 n.2. Quoting a treatise, it stated that courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum."

While the Court did not explain why plaintiff's state court complaint could be characterized as artful pleading, it is clear that more was involved than simply that the claims made under state law could also have been made under federal law or even that they were copied from other parties' pleadings grounded on federal law. As the foregoing discussion shows, plaintiff's right to control his pleadings is firmly established and could not be curtailed by binding him to the characterization others may have placed on the same claims.

The critical element in *Moitie* was that Brown had previously filed the identical claims as federal claims in the federal court. Having once exercised his option to assert these claims as federal rather than state claims, Brown could not later retreat from that decision to the prejudice of defendants. For the effect of permitting Brown to prosecute the same claims under state law in the second action would have been to impair the ability of defendants to assert the federal res judicata defense against those claims.[8]

8. The Court is convinced that this is the correct rationale for the Supreme Court's statement concerning the artful pleading doctrine, for it is the only one that can be squared with the established law, previously discussed, governing plaintiff's control over his pleadings. The absence of a fuller explanation in the opinion may be attributable to the fact that the jurisdictional issue itself, *i.e.*, whether the claims asserted were federal claims, was res judicata. That position was taken by Justice Blackmun in his concurring opinion, joined by Justice Marshall. 101 S.Ct. at 2430.

Justice Blackmun's rationale parallels the reasoning of the court of appeals and the district court in rejecting Brown's motion to remand. The court of appeals had said:

Appellants first contend that removal was improper because they stated a valid state claim. We disagree. The court below correctly held that the claims presented were federal in nature, arising solely from price

Similar reasoning was employed in *Vitarroz v. Borden, Inc., supra,* arising under trademark and unfair competition law, which gives plaintiffs a comparable choice between state and federal law. Judge Newman held that plaintiff, by failing to seek remand of the action to state court, accepted defendant's characterization of its claims as federal.[9]

An analogous case is *Three J Farms, Inc. v. Alton Box Board Co.,* 1979–1 CCH Trade Cas. ¶ 62,423 (D.S.C.1978), *rev'd and remanded on other grounds,* 609 F.2d 112 (4th Cir. 1979), *cert. denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). Plaintiffs instituted an action under South Carolina's antitrust statute against manufacturers and sellers of corrugated containers. Defendants removed from the state court. The district court initially remanded and then sought to reverse its decision by an order which was vacated on appeal for lack of jurisdiction. In that order the district court noted that the claims asserted, albeit under state law, were identical to those

asserted in class actions under the federal antitrust laws then pending in the federal courts. Plaintiffs were members of the plaintiff class in those actions when they filed their complaint, never having opted out. The district court did not discuss the artful pleading doctrine, but it is evident that plaintiffs, by remaining members of the federal antitrust class, had accepted the federal character of their antitrust claims. The district court did not allow plaintiffs by artful pleading to prejudice defendants by forcing them to defend essentially federal claims in both state and federal courts.

In the second type of situation, the antitrust claims purportedly asserted under a state statute were beyond the scope of that statute. In two cases filed in the state courts of South Carolina under that state's antitrust laws, plaintiffs' allegations were based on transactions involving interstate commerce. The South Carolina courts had long interpreted their antitrust law to exclude interstate transactions. The district

fixing on defendants' part. In light of our disposition of this appeal, appellants will not quarrel with the result.
611 F.2d at 1268. Since Brown did not cross-petition, that determination had become final and was not before the Supreme Court for review. *See* note 14, *infra.*

The court of appeals decision having been reversed, the above-quoted statement presumably is without precedential force. It should be observed, however, that to hold claims to be "federal in nature" only because they "aris[e] solely from price fixing on defendants' part" would impair both state power to prohibit price fixing and plaintiffs' traditional choice of forum.

Reference should here be made to the much cited decision in *California v. California & Hawaiian Sugar Co.,* 588 F.2d 1270 (9th Cir. 1978). That case presents somewhat the obverse situation from *Moitie.* The state had filed a class action on behalf of consumers in the federal court. It later filed a similar class action in the state court under state antitrust laws. The federal court refused to certify the federal action, upon the authority of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (barring most claims by indirect purchasers). Defendants removed the state court action, contending that the facts alleged gave rise to a federal antitrust claim, that interstate commerce was involved, and that the allegations were copied from a prior criminal complaint filed by the United States. After denying

class certification, the district court denied plaintiffs' motion to remand. The court of appeals reversed, saying:
> While the process of removal of state actions looks to trial of the removed cause in a more appropriate forum, here removal will assure that the cause will never be tried at all. It would be incongruous for us to construe these state law consumer class claims as arising under federal law when, under federal law as announced in *Illinois Brick,* it would appear that they never arose at all. On the other hand, under California state law they may not be foreclosed.

588 F.2d 1273.

9. A variation on this theme is represented by the decision in *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219 (5th Cir. 1976). After settling and dismissing a personal injury action in the federal court, plaintiff commenced an action in the state court alleging that defendant by converting critical evidence had forced him to settle for less than he was entitled to. The court held the action removable as an attempt to recover additional damages for the same injuries on which the prior federal action was based. In effect the second state action sought relief, on the basis of fraud, from the prior federal judgment. This collateral attack was a matter clearly within the federal court's jurisdiction, and the attempt to ground it on state law was rejected as artful pleading.

courts therefore held the claims asserted to be federal, not state claims. *Three J Farms, Inc. v. Alton Box Board Co., supra; In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980).

The foregoing decisions are consistent with what this Court believes to be the correct application of the artful pleading doctrine. It must, however, be recognized that those as well as other cases contain judicial expressions which, if accepted, would go beyond the limited application here outlined and effectively nullify the settled rule that plaintiff can control whether to pitch his case on state or federal grounds. Thus, courts have deemed claims grounded on state law to have a "federal character" because of their similarity to claims asserted in federal antitrust actions. *See, e. g., KMT Corp. v. American Maize Products Co.,* No. EC 80–318–LS–P, (N.D. Miss., Jun. 23, 1981); *Moitie v. Federated Department Stores,* No. C–77–0576–SW (N.D.Cal., Jun. 30, 1977), *rev'd,* 611 F.2d 1267, 1268 (9th Cir. 1980), *rev'd* 101 S.Ct. 2424 (1981); *In re Wiring Device Antitrust Litigation, supra,* 498 F.Supp. 82; *Prospect Dairy Inc. v. Dellwood Dairy Co.,* 237 F.Supp. 176 (N.D.N.Y.1964) (also involving a preemptive claim under federal labor law). Courts have also adverted to considerations of judicial economy and efficiency in declining to remand. *See Three J Farms, Inc. v. Alton Box Board Co., supra.* The artful pleading doctrine, however, in the context of the antitrust laws, does not rest on the proposition that the claim asserted *could* have been, or *should* preferably have been asserted as a federal claim. Accordingly, the doctrine under present law can apply only when the plaintiff by his own conduct, either by filing originally in federal court or by acceding to federal jurisdiction after removal, has made his claim a federal one. He should not thereafter be allowed to escape the consequences of that conduct to defendant's prejudice.

### 4. *Disposition of the Motions to Remand*

#### a. *The Allied Finance Adjusters Case*

■ Defendants oppose the motion to remand on the grounds that the transactions complained of were by plaintiffs' own admission in interstate commerce and hence subject to the Sherman Act, and that the complaints are simply copies of antitrust actions previously brought by the government against these defendants under the Sherman and Clayton acts.

As the foregoing discussion shows, those grounds are insufficient to establish federal jurisdiction. Plaintiffs have a right to assert their antitrust claims, even if they affect interstate commerce, under the Cartwright Act, regardless of whether they could also have been asserted under the Sherman Act.

The motion to remand must therefore be granted.

#### b. *The Salveson Case*

■ Plaintiffs in this action filed a prior action against substantially the same defendants in this Court in 1977. *Electronic Currency Corporation, v. Western States Bankcard Association,* No. C–77–2077–SW (N.D.Cal., filed Sep. 16, 1977). In that action plaintiff ECC, later joined by its founder and predecessor in interest, Melvin Salveson, charged that defendants had engaged in a conspiracy in violation of Section 1 of the Sherman Act by, among other things, acting to destroy competition in the national credit card market, suppressing plaintiffs' attempts to expand that market, and preventing plaintiffs from entering that market. In February, 1978, plaintiffs filed an amended complaint in this Court again alleging defendants' violations of the federal antitrust laws by acts impairing plaintiffs' ability to participate in the general-purpose commercial transaction card business.

Specifically, defendants were charged with fraudulently entering into a 1967 agreement with Salveson settling any claims that defendants had misappropriated his ideas, and arranging for mutual cooperation in developing credit card interchange systems over the next decade. In addition, plaintiffs contended that defendants had

purposely interfered with their efforts to expand such systems to other markets, and had created a "duopoly" in the general-purpose credit card market.

After discovery and other proceedings, defendants in 1980 moved for summary judgment. On February 20, 1981, the motion was granted on statute of limitations grounds. Shortly thereafter, plaintiffs sought leave to file a second amended complaint in which they again alleged in greater detail their claim under the federal antitrust laws. Leave to file that complaint was denied on April 1, 1981. Plaintiffs' motion for reconsideration of the order granting summary judgment was denied on June 3, 1981.[10]

Meanwhile, on March 27, 1981, plaintiffs filed the instant complaint in the state court. In the seventh cause of action of that complaint, plaintiffs alleged that defendants violated the Cartwright Act by conspiring to restrain and monopolize the trade in the national general purpose transaction card market, foreclosing plaintiffs from participating in that market. In addition, plaintiffs set forth six causes of action alleging common law fraud, fraudulent inducement to contract, misappropriation of plaintiffs' programs and ideas, interference with business relations, and breach of contract (i.e., breach of the 1967 agreement).

Although plaintiffs' various complaints are models of prolix and confusing pleading, they leave no doubt that the gravamen of the various antitrust charges is the same, i.e., that defendants acted to exclude plaintiffs from the national credit card business.[11] Plaintiffs could have asserted that claim initially under the Cartwright Act. They chose, however, to proceed under the Sherman Act. Beginning in 1977 and continuing until 1981, they repeatedly asserted their claim as a federal claim, thereby invoking this Court's jurisdiction. They maintained their claim as a federal claim

until it was dismissed by the Court as untimely. Only then, for the first time, did they purport to assert that claim as a state law claim.

Upon this record, this case presents a classic instance of artful pleading. Having suffered a ruling terminating their federal claim, plaintiffs would now seek to escape its effect by pleading the same claim under state law. *Moitie* is squarely on point and requires denial of the motion to remand.

Accordingly, plaintiffs' motion to remand must be denied.

### D. What is the Appropriate Disposition of the Properly Removed Federal and State Claims?

#### 1. *The Federal Antitrust Claim*

■ Having determined that the seventh cause of action in the Salveson Case is a federal antitrust claim, the Court must next determine its appropriate disposition.

■ It has long been settled that the jurisdiction of a federal court on removal is derivative. "When a cause is removed from a state court into a federal court the latter takes it as it stood in the former." *General Investment Co. v. Lake Shore Railway*, 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922). "If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio Railroad*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). A federal law claim removed from a state court having no jurisdiction of it must therefore be dismissed.

While the derivative jurisdiction doctrine has been criticized, 14 Wright, Miller & Cooper, *supra*, § 3722 at 574, 1A Moore, *supra*, ¶ 0.157[3], at 46, it remains the law today.[12] None of the cases enunciating and

---

10. Because counterclaims remained pending, judgment was not entered until September 28, 1981.

11. At oral argument counsel for plaintiffs was unable to point to any significant differences between the state and federal pleadings.

12. The derivative jurisdiction doctrine is not wholly without rational basis. Where Con-

applying it have been overruled; Congress has taken no action to repeal it; and courts continue to follow it, albeit erratically at times. *Compare, e. g., Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654 (9th Cir. 1972), *with Fristoe v. Reynolds Metals Co., supra.*

The most serious question concerning the continuing vitality of the derivative jurisdiction doctrine is raised by the Supreme Court's decision in *Moitie*. The issue in that case was whether the second Brown action was barred by res judicata, the first action having been dismissed by the district court. Jurisdiction over the second action was acquired by removal from the state court. Since the district court determined that the second action stated a federal claim and was therefore properly removed, its juris-

diction was derivative and, the state court having lacked jurisdiction of the federal antitrust claim, the district court could acquire none. The correct disposition of the Brown complaint, under *Lambert Run* and *Lake Shore*, would seem to have been dismissal. Inasmuch as the district court dismissed the action as res judicata, the outcome was the same as what it would have been had it been dismissed for lack of jurisdiction.[13] The Supreme Court's decision upholding the district court in *Moitie* is therefore not necessarily inconsistent with *Lambert Run* and *Lake Shore*, even if it does create a shadow of doubt respecting their continuing vitality.[14]

The Ninth Circuit followed the derivative jurisdiction doctrine in *Washington v. American League of Professional Baseball*

gress has provided for exclusive jurisdiction over a cause of action in the federal courts, it is not unreasonable to require the plaintiff to comply with the various procedural requirements governing commencement of the action in federal court. *See Freeman v. Bee Machine Co.*, 319 U.S. 448, 455, 63 S.Ct. 1146, 1150, 87 L.Ed. 1509 (1943) (Frankfurter, J., dissenting). The effect of consistent application of the derivative jurisdiction doctrine would, of course, be to preclude maintenance of most federal question cases after removal and to require plaintiffs to refile in the federal court.

**13.** Arguably, a dismissal for lack of jurisdiction might not have been as favorable to defendants, because plaintiffs could proceed against them again in state court. As a practical matter, however, it would have established the federal nature of the claim and precluded further litigation in the state court as effectively as the res judicata determination.

**14.** It could perhaps also be argued that since the issue of subject matter jurisdiction was not before the Court, as observed by Justice Blackmun (*see* note 8, *supra*) the Court did not have to decide it and its statements in that regard were only dictum. As a general rule, subject matter jurisdiction cannot be waived; the parties cannot confer jurisdiction on a federal court by consent, and the issue can therefore be raised by the Court sua sponte on appeal, as it was in *Lambert Run Co. v. Baltimore, & O. R.R. supra*. *See Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System, 835–38 (2d ed. 1973).

The general rule may not, however, be applicable in a case improperly removed to federal court which would have been within the original jurisdiction of the court:

There are cases which uphold judgments in the district courts even though there was no right to removal. In those cases the federal trial court would have had original jurisdiction of the controversy had it been brought in the federal court in the posture it had at the time of the ... entry of the judgment.

*American Fire & Cas. Co. v. Finn, supra*, 341 U.S. 16, 71 S.Ct. 541 (1951) (dictum); *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). The Court in *Finn* reasoned that parties may be permitted to waive objections to *removal* jurisdiction where the district court would have had original jurisdiction over the claim. Unlike waiver of subject matter jurisdiction, where the effect would be to enlarge the court's jurisdiction by forcing upon it matter that it has not been authorized to decide (except by pendent or diversity jurisdiction), waiver of objections to removal jurisdiction in such a case only brings before the district court a claim that could have been heard in federal court from the beginning. Thus, in *Moitie*, where the district court would have had original jurisdiction over Brown's antitrust claims, there was no question of enlarging the court's jurisdiction by treating as waived any objections to removal jurisdiction that were not raised by cross-petition from the decision below. *See Moitie, supra*, 101 S.Ct. at 2430 (Blackmun, J., concurring); 14 Wright, Miller & Cooper, *supra*, § 3739, at 758 (objections to improper removal, unlike objections to lack of subject matter jurisdiction, may be waived if not timely asserted). *But see In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980).

*Clubs, supra.* The complaint in that case alleged violations of both the Sherman Act and the state antitrust and consumer protection laws. The district court denied the motion to remand. On appeal the court held that the express allegation of a claim under the federal antitrust laws, within the exclusive jurisdiction of the federal courts, made the action removable. Following *Lambert Run* and *Lake Shore*, it held the federal court's jurisdiction on removal to be derivative, mandating dismissal of the federal claims.[15]

As dismissal for lack of jurisdiction is the proper disposition under the derivative jurisdiction doctrine, the seventh cause of action of the Salveson complaint must be dismissed.

### 2. The State Law Claims

#### a. Retention of jurisdiction

 Dismissal of the seventh cause of action leaves open the question of the proper disposition of the first six causes of action, all of which arise under state law. Once a case has been properly removed, the federal court acquires and retains jurisdiction of state law claims regardless of the

dismissal of the federal claim. *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970); *Watkins v. Grover*, 508 F.2d 920 (9th Cir. 1974). Jurisdiction of state claims may rest on their separate and independent nature under 28 U.S.C. § 1441(c) or on the district court's pendent jurisdiction over all claims having a common nucleus of operative facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Murphy v. Kodz*, 351 F.2d 163, 166–67 (9th Cir. 1965). In this case, all of the claims being between the same parties and arising out of a single series of transactions, the pendent jurisdiction principle applies. 14 Wright, Miller & Cooper, *supra*, § 3722, at 572–73. The Court therefore has jurisdiction to entertain the state law claims, notwithstanding the need to dismiss the federal law claim under the principle of derivative jurisdiction.[16]

 The fact that this Court retains jurisdiction of the pendent state law claims does not determine, however, whether it should exercise that jurisdiction. The Court has discretion to retain those claims or to dismiss or remand them.[17] *Murphy v.*

---

**15.** The *Baseball* court then encountered difficulty, however, because the federal claims were not separately stated and were "inseparably intertwined with the state claims arising out of the same set of facts." Dismissal therefore would have resulted in dismissal as well of the state law claims, which, according to the court, did not have to be and "should not be dismissed." Cutting the Gordian knot, the court decided to remand the entire action. That problem is not presented here because the federal claim is separately stated and is therefore capable of being dismissed without affecting the state claims.

**16.** That conclusion is consistent with the action of the courts in *Lake Shore, supra.* The court of appeals, after concluding that the antitrust claim had to be dismissed because it had been removed from the state court which lacked jurisdiction of it, said with respect to the state law claims:

> So far as the relief prayed for was shown to stand upon the supposed violations of state Constitutions or laws, no question of jurisdiction is involved; but we must ascertain whether the bill states a good case for the relief sought.

269 F. 235, 238 (6th Cir. 1920). The Supreme Court affirmed. 260 U.S. at 288–89, 43 S.Ct. at 117.

**17.** Because the Court has decided to retain jurisdiction of the state claims, it is not necessary to reach the question whether, when a court decides not to retain jurisdiction of removed state claims, the correct disposition is remanded to state court or dismissal. *Cf.* 1A Moore's Federal Practice ¶ 0.169[1], at 554–58; Hart & Wechsler's The Federal Courts and the Federal System, *supra*, at 1199–1201. Nevertheless the existence of the problem should be recognized. Remand is a creature of statute. The only express authority for it is found in § 1441(c), allowing discretionary remand of separate and independent non-removable claims not within original federal jurisdiction, and in § 1447(c), providing for remand where the case "was removed improvidently and without jurisdiction." Section 1441(c) does not apply where, as here, the claims arise out of a common nucleus of operative facts. In that situation, remand technically appears available only under § 1447(c) if the action has been improperly removed.

That is not true of the instant case; although the federal claim must be dismissed under the

*Kodz, supra; Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir. 1978); *Ondis v. Barrows,* 538 F.2d 904, 908 (1st Cir. 1976); *Johnson Builders, Inc. v. United Brotherhood of Carpenters and Joiners, Local Union Number 1095,* 422 F.2d 137, 141 (10th Cir. 1970); *Hazel Bishop, Inc. v. Perfemme, Inc.,* 314 F.2d 399 (2d Cir. 1963). By analogy to cases originally filed in federal court, whether the court should exercise its pendent jurisdiction over state claims turns on "considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers v. Gibbs, supra,* 383 U.S. 726, 86 S.Ct. 1139. In that case, the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided ... [c]ertainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." 383 U.S. 726, 86 S.Ct. 1139. *See also American Fire & Casualty Co. v. Finn, supra,* 341 U.S. 10 n.3, 71 S.Ct. 538 n.3.

In this case, however, no novel or significant questions of state law or policy are implicated, nor are the claims presented likely to reach trial in the state court. The disposition of these claims does, however, touch on matters of concern to the federal courts, primarily the res judicata effect on state claims of a prior dismissal order of federal claims by this Court. Because that

derivative jurisdiction doctrine, its removal was entirely proper. It has therefore been argued that remand is not an available procedure and, if the court chooses not to retain the state claims, they must be dismissed.

The precise issue appears to have never been directly addressed in any reported decision. Generally, remand and dismissal terminology has been used interchangeably. *See, e. g., Murphy v. Kodz, supra,* 351 F.2d 168 ("These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State Court.") In *Ondis v. Barrows, supra,* 538 F.2d 908, the court held that as a matter of "fairness" the district court should have remanded rather than dismissed. In *Washington v. American League of Prof. Baseball Clubs, supra,* 460 F.2d 659, the court ordered remand of both federal and state claims, although properly removed, to resolve the "practical difficulty" of dismissing federal claims which were not separately stated and were "inseparably intertwined with the state claims." *See also* discussion in *Thermtron*

question is ripe for decision, considerations of economy also support retention of jurisdiction. *See In re Carter,* 618 F.2d 1093 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981) (retention of state claims not an abuse of discretion).

### b. *Res judicata*

The complaint filed in state court and removed to this Court is essentially concerned with the same sequence of acts and events that underlay plaintiffs' earlier federal action for antitrust violations. The 1967 agreement between Salveson and several of the defendants was treated in the earlier action as a deceitful step in a plan to obtain the advantage of Salveson's ideas and then exclude him from the credit card interchange market. In the action filed in state court, that agreement and the conduct of the defendants relevant to the subject matter of the agreement are viewed as giving rise to an action for fraudulent inducement to contract, misappropriation of Salveson's plans, breach of the agreement, and intentional interference with Salveson's (and his successor ECC's) contractual relationships with third parties. Because of the virtual identity of the parties, the question naturally arises whether some of these state law "causes of action" are not, in fact,

*Products, Inc. v. Hermansdorfer, supra,* 423 U.S. at 346–48, nn.10, 12, 96 S.Ct. 590–91 nn.10, 12.

Unless one were to accept authority to remand cases falling under neither Section 1441(c) nor Section 1447(c) as being within the district court's inherent power, developed as a part of federal common law, the courts in these cases would be limited to retaining jurisdiction of the state claims or dismissing them.

The issue can be of substantial importance; it affects the application of the statute of limitations, the priority of the case upon its return to the state court, and the reviewability of the district court's order itself. *Gravitt v. Southwestern Bell Telephone Co.,* 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (remand orders under Section 1447(c) are not reviewable by reason of Section 1447(d)); *see also Thermtron Products, Inc. v. Hermansdorfer, supra,* 423 U.S. at 346, 96 S.Ct. at 590; *In re Greyhound Lines,* 598 F.2d 883 (5th Cir. 1979). An authoritative clarification would be helpful to district courts.

merged by the doctrine of res judicata with the federal antitrust litigation dismissed earlier.[18]

A judgment that is valid, final, and on the merits is an absolute bar to any subsequent action between the same parties (or those in privity with them) on the same cause of action. 1B Moore's Federal Practice, *supra*, ¶ 0.410[2], at 1163. A judgment dismissing a complaint for failure to state a claim because of the statute of limitations, as in the federal ECC action that preceded the present one, is a final judgment on the merits. *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1330 n.3 (9th Cir. 1981). The parties to the present action, with the exception of the three credit union organizations—who have not been served and who have not appeared—are identical to those in the earlier federal action, and the judgment of dismissal in that earlier action is now final. It remains, then, only to determine the scope of the right of action that has been litigated to a conclusion.

It is the facts surrounding the alleged injury that define the cause of action, rather than the various, and often inconsistent, legal grounds or theories that could be asserted concerning that injury. *E. g., Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). A subsequent action advancing a different legal theory based on the same events and injuries is barred by a final decision in the first action where that theory could have been argued as an alternative or additional ground for recovery. *E. g., Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976) (plaintiff who unsuccessfully sued on statutory grounds in state

court to set aside a foreclosure sale was barred from bringing later federal suit alleging that the foreclosure sale violated her civil rights). *See also* Restatement (Second) of Judgments, § 61.1 (Tent. Draft No. 5, Mar. 10, 1978).

The governing principle is that a party will not be permitted to litigate matters he has already had an opportunity to litigate, whether or not he actually took full advantage of that opportunity. *See Engelhardt v. Bell & Howell Co.*, 327 F.2d 30 (8th Cir. 1964). This is a rule that seeks to reconcile the demands of fairness and efficiency.

Thus, res judicata has been applied to foreclose state law claims that could have been raised in a federal antitrust suit that was litigated to a conclusion over the same injury or set of operative facts. *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939 (7th Cir., 1981) (enjoining state contract action following dismissal of plaintiff's antitrust claims against the same defendant in federal court: plaintiff must "join all relevant theories of relief in a single proceeding"); *Brown v. Federated Department Stores, Inc.*, 653 F.2d 1266 (9th Cir. 1981) (Ninth Circuit, on remand from *Moitie, supra*, disposed of the state law claims in *Brown* by saying that even if they were not merely artfully pleaded federal antitrust claims, they were barred by res judicata because they arose from the same transactions as the antitrust claims, and plaintiffs, under pendent jurisdiction, could have asserted those claims in the federal action);[19] *Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.*, 295 F.2d 362 (5th Cir. 1961) (earlier judgment in contract action barred antitrust action based on same alleged refusal to sell).

**18.** Plaintiff's Cartwright Act claim, were it not otherwise disposed of as an artfully pleaded federal antitrust claim, would also readily be dismissed as barred by res judicata. It could have been appended to the federal claims, and its elements do not materially differ from those of the federal claims. *Cf. Woods Exploration & Producing Co. v. Aluminum Co. of America, supra*, 438 F.2d at 1313–15 (federal court decision against antitrust plaintiffs would be res judicata in subsequent state antitrust action, so

federal court was justified in enjoining the later state antitrust proceedings brought by plaintiff against same defendant).

**19.** *See also Federated Department Stores, Inc. v. Moitie, supra*, 101 S.Ct. at 2430 (Blackmun, J., concurring), where Justice Blackmun expresses the opinion that res judicata disposed of the state law claims that were tardily asserted.

With these principles in mind, it is not difficult to dispose of plaintiffs' breach of contract claims, the third and fourth "causes of action." Not only did plaintiffs have the opportunity, but they actually did raise this theory in the federal antitrust action. ECC presented this ground for recovery as Count II, "Breach of Contract," in the original complaint filed March 21, 1977; Salveson alleged breach of contract in the joint answer and counterclaim he and ECC filed in July, 1977. The counterclaim was dismissed in 1978 when plaintiffs were given leave to file an amended complaint. Their amended complaint did not include a breach of contract claim. Hence, the action went to judgment without further litigation on the issue of breach of the 1967 agreement as a state law claim, but only because plaintiffs chose to drop it, and the judgment in that action now bars the attempt to raise this claim again.

It is equally clear that res judicata *cannot* be applied to bar the fifth and sixth causes of action listed in the present complaint. The sixth charges that two credit union organizations intentionally interfered with the 1967 contract. These defendants, who have not been served and have not appeared, were not parties to the earlier action. The fifth cause of action, asserted against the same defendants who appeared in the first federal action as well as three credit union entities, also alleges intentional interference with plaintiffs' business relations. This claim appeared as the "Second Cause of Action" of the 1978 amended complaint in the earlier action, but the district court dismissed that cause in May, 1978, for lack of subject matter jurisdiction. As the court would not entertain the cause as a pendent claim then, plaintiffs cannot be denied the opportunity to litigate that claim now.

The first and second causes of action, for fraud and misappropriation, were not explicitly raised as separate grounds for recovery in the original federal complaint, although allegations in the complaint (particularly ¶¶ 19–27) include instances of fraud and a deceptive effort to retain the benefit of some of Salveson's ideas by settling with him and appearing to favor future collaboration. This conduct was integral to the alleged monopolization scheme and to the breach of contract that was asserted in the first complaint. Much of the same evidence would be used to establish either theory of the defendants' course of conduct towards plaintiffs concerning the interchange plans and the 1967 agreement. Hence, as in *Brown* and *Harper Plastics*, plaintiffs could have asserted these state law claims in the proceeding dealing with the same course of conduct and are therefore now barred from asserting them here.

It may well be, as plaintiffs now contend, that in the course of discovery in the first federal action they have uncovered additional evidence of wrongdoing. But additional evidence of the same wrongful conduct and injury is not tantamount to a new right of action. As allegations in their own earlier pleadings show, plaintiffs knew enough to allege fraud and conversion at an early stage in the first litigation. It would foster inefficiency at best and harassment at worst to reopen litigation between the same parties on the 1967 agreement and on the uses to which defendants put certain ideas or schemes claimed to have originated with Salveson. As Justice Blackmun stated in *Moitie, supra*, 101 S.Ct. at 2430 (Blackmun, J., concurring), "there is a special need for strict application of res judicata in complex multiple party actions of this sort so as to discourage 'break-away' litigation."

### c. *Statute of limitations*

The fifth and sixth causes of action in the present complaint, asserting intentional interference with business relations, are not barred by the doctrine of res judicata. But it is apparent from the 1977 and 1978 pleadings in the earlier federal action that the operative facts essential to these claims were known or suspected by plaintiffs early enough to bar these claims in 1981 under the applicable California statute of limitations. Similarly, and as an alternative ground for dismissal of the first four counts of the present complaint, the earlier

pleadings reveal that the other state law claims are also barred by the applicable statutes of limitations.

■ The first cause of action, alleging fraud and fraudulent inducement to contract, is governed by Cal.Civ.Proc. Code § 338(4) (West Supp.1981), which requires that such actions be brought within three years of the date of discovery "of the facts constituting the fraud or mistake." California law has long been settled that plaintiffs suing for fraud or mistake more than three years after the relevant events must plead and prove (1) their lack of knowledge of the operative facts, (2) the absence of means of obtaining that knowledge (*i. e.*, exercising reasonable diligence, plaintiffs still could not have discovered the facts within three years), and (3) the time and manner of their actual discovery of the facts. *E. g., Casualty Insurance Co. v. Rees Investment Co.,* 14 Cal.App.3d 716, 719–720, 92 Cal.Rptr. 857, 859 (5th Dist. 1971); 2 B. Witkin, California Procedure, "Actions," § 339 (2d ed. 1970 & Supp.1979).

Plaintiffs do not identify fraudulent acts that occurred within three years of this complaint. Hence, they must assert their inability to discover until some more recent time the operative facts of earlier instances of fraud relied on. Plaintiffs claim that they have only recently acquired knowledge of certain misrepresentations made to induce Salveson to sign the 1967 settlement agreement with the bank defendants, whereby he abandoned his claims that the banks had misappropriated his concepts and agreed to some form of future cooperation and compensation. But the earlier complaint, filed March 21, 1977, more than three years before the instant complaint, contained allegations that defendants had "consistently refused to negotiate an interchange with ECC in good faith" (¶ 26) and that defendants "*never* intended to conclude an interchange agreement" pursuant to the contract (¶ 27, emphasis added). That complaint and subsequent pleadings recited numerous instances of conduct by defendants allegedly in contravention of the agreement, some of them following quite closely upon the 1967 agreement and reflecting a certain amount of prior planning. Hence, the pleadings more than three years ago revealed plaintiffs' mistrust and grounds for suspicion of defendants' good faith in entering into the agreement. Plaintiffs thus having been on inquiry notice more than three years ago as to the possibility of fraudulent inducement in the formation of the 1967 contract, this claim is time-barred.

■ Plaintiffs' second cause of action, for "fraud and fraudulent misappropriation" in the "conversion" of Salveson's plans and concepts is similarly barred. Misappropriation or conversion of intangible interests is governed by the two-year statute of Civ.Proc. Code § 339(1) (West Supp. 1981). *See Italiani v. Metro-Goldwyn-Mayer Corp.,* 45 Cal.App.2d 464, 114 P.2d 370 (3d Dist. 1941); Witkin, *supra,* "Actions," § 329. But even extending the benefit of the three-year statute to plaintiffs because of the allegation of fraud, this claim regarding defendants' wrongful use of Salveson's ideas is stale. The 1967 agreement was drawn up precisely to settle Salveson's claims that the banks had misappropriated his ideas for a more technically efficient check and credit card interchange procedure and his scheme for a retail credit card system, as ECC's original complaint acknowledged in 1977 (¶ 19). The 1977 complaint, as well as the February, 1978, amended complaint filed jointly by ECC and Salveson, recited facts concerning a subsequent or continuing misappropriation of Salveson's concepts, including the delayed return of Salveson's computer tapes and the development of a national retail credit card system patterned on many of Salveson's ideas. Plaintiffs explicitly charged that defendants knowingly "misappropriated, stole, and misused property interests and trade secrets of plaintiffs" in ¶ 21(i) of the 1978 amended complaint, more than three years before filing the present action.

The third and fourth causes of action, for breach of the 1967 agreement, are similarly beyond the applicable four-year limitations period of Civ.Proc. Code § 337(1) (West

Supp.1981). It is apparent from the pleadings in the earlier federal action that plaintiffs, more than four years ago, were charging that the agreement had been breached in August, 1975 (complaint, ¶ 41) or August, 1976 (ECC and Salveson's counterclaim of July, 1977, ¶ 83), and that plaintiffs were aware of the breach at least by the latter date. The alleged breach was thus more than four years old, by plaintiffs' own reckoning, when they brought the instant action in March, 1981.

The fifth and sixth causes of action have to do with tortious interference with protected business or contractual relations. California courts have treated such actions as "miscellaneous" tort actions covered by the two-year statute of Civ.Proc. Code § 339(1) (West Supp.1981). *See Edwards v. Fresno Community Hospital*, 38 Cal.App.3d 702, 706, 113 Cal.Rptr. 579, 581 (5th Dist. 1974) (and cases cited therein); 2 Witkin, *supra*, "Actions," § 329.

The fifth cause of action charges that the defendant banks combined and conspired with three credit union organizations to interfere with certain contractual or advantageous relations of plaintiffs. The allegations show on their face that the relevant acts and conduct occurred in 1975 and 1976. That interpretation is corroborated by the fact that similar allegations of interference (albeit without specific reference to the credit union organizations) were made in plaintiffs' 1977 complaint (¶¶ 23–25) and 1978 amended complaint (¶ 21(m)).

The sixth cause of action charges that two of the credit union organizations interfered with plaintiff's contractual relations under their 1967 agreement with the banks. This claim too is time-barred on its face.

For the reasons stated, therefore, the motion to remand the Allied Finance Adjusters action is granted, and the Salveson action is dismissed.

IT IS SO ORDERED.