Melvin E. SALVESON, an individual, and Electronic Currency Corporation, a corporation, Plaintiffs-Appellants,

v.

WESTERN STATES BANKCARD ASSOCIATION, et al., Defendants-Appellees.

Melvin E. SALVESON, an individual, and Electronic Currency Corporation, a corporation, Plaintiffs-Cross-Appellees,

v.

WESTERN STATES BANKCARD ASSOCIATION and Mastercard International, Inc. (formerly Interbank Card Association), Defendants-Cross-Appellants.

Melvin E. SALVESON, an individual, and Electronic Currency Corporation, a corporation, Plaintiffs-Cross-Appellees,

v.

The BANK OF CALIFORNIA, N.A., Defendant-Cross-Appellant.

Nos. 82–4067, 82–4113 and 82–4139.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1982.

Decided May 1, 1984.

Lawrence John Appel, Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs-appellants.

John B. Bates, Terence A. Callan, Michael H. Salinsky, Mark White, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before ANDERSON and POOLE, Circuit Judges, and SOLOMON,[*] District Judge.

POOLE, Circuit Judge:

In the aftermath of the Supreme Court's decision in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), we are called upon to decide what is the proper treatment when, in a case removed from state to federal court, it is determined that the plaintiff's complaint, though "artfully pleaded" as a state claim, is in fact a feder-al claim over which federal courts have exclusive jurisdiction. This also requires us to decide how the Court's 1981 decision impinges upon the doctrine of "derivative jurisdiction" as applied in this circuit.

1. *Background*

The federal litigation had its genesis in a previous suit brought largely against the same group of defendants[1] in federal district court in 1977 (*see Electronic Currency Corp. v. Western States Bankcard Assn.,* No. C-77-2077-S.W. (N.D.Cal., filed September 16, 1977)), by plaintiff Electronic Currency Corporation (ECC). In 1978, its founder, Melvin E. Salveson, joined the action as plaintiff. The suit charged that defendants had conspired in violation of the Sherman Act to prohibit plaintiffs from entering the general purpose credit card business.

Specifically, the complaint alleged that in 1967 and prior years Salveson had raised claims to the effect that the defendants had misappropriated his property rights in certain ideas for developing the general-purpose credit card business which he had discussed with them; that during 1967, the defendants entered into an agreement with Salveson purporting to settle those claims and providing for mutual cooperation by the parties in developing credit card interchange systems during the following ten years; that the defendants never intended to carry out the agreement, and wrongfully interfered with Salveson's efforts to enter the business on his own; that the defendants tortiously refused to deal with ECC and Salveson; and that, instead, the defendants created a "duopoly" of VISA and Mastercharge in the general-purpose credit card market, all in violation of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2.

---

[*] The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

**1.** In the original federal action, the Bank of America, N.T. & S.A. was named as a defendant, but was not named in this action. Three addi-tional defendants, all credit union organizations, were not named in the first action but were included in the present suit. None of these latter three defendants, however, have been served or have appeared in these proceedings.

On February 20, 1981, the district court granted defendants' motion for summary judgment on the grounds that the suit was barred by the statute of limitations. *See* 15 U.S.C. § 15b. This judgment was subsequently affirmed by this court on appeal. 703 F.2d 574 (9th Cir.1983) (non-pub.), *cert. denied,* —— U.S. ——, 104 S.Ct. 426, 78 L.Ed.2d 360 (1983).

On March 27, 1981, following entry of the judgment, plaintiffs filed the instant case in California state court. The complaint stated seven causes of action. The first six counts alleged common law fraud, fraudulent inducement to contract, misappropriation of plaintiffs' programs and ideas, interference with business relations, and breach of the 1967 agreement. The seventh cause of action alleged that defendants had violated the state antitrust statute, the Cartwright Act, Cal.Bus. & Prof.C. §§ 16720 et seq., by conspiring to restrain and monopolize the national general-purpose credit card market.

Defendants then removed the state court suit to federal district court pursuant to 28 U.S.C. § 1441[2] on the theory that the suit involved claims arising under the antitrust laws of the United States. In district court, defendants next moved to dismiss under Fed.R.Civ.P. 12(b)(6), on the grounds of res judicata and statute of limitations. Plaintiffs moved for remand to the state court.

On October 22, 1981, District Judge William Schwarzer denied the motion to remand and granted defendants' motion to dismiss. 525 F.Supp. 566 (N.D.Cal.1981). The district judge concluded that under the authority of *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the state suit claims were actually artfully pleaded federal claims and that res judicata properly applied. *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566 (N.D.Cal. 1981). The district court further concluded

that the action had been properly removed to the federal court. The court dismissed with prejudice the first six state causes of action on statute of limitations or res judicata grounds, but dismissed the state antitrust claim without prejudice for want of jurisdiction under the derivative jurisdiction doctrine. *Id.* at 578–80.

### 2. *Discussion*

#### A. Was the Case Properly Removed?

■ Plaintiffs contend that the district court erred in denying their motion to remand to the state court. The standard of review is whether the case was properly removed to the federal court in the first instance under 28 U.S.C. § 1441. *Stone v. Stone,* 632 F.2d 740, 742 n. 1 (9th Cir.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).

The removal statute authorizes removal of any action based on a claim or right arising under federal law. 28 U.S.C. § 1441. The central issue is therefore whether the district court correctly concluded that one or more of plaintiffs' claims arose under federal antitrust law. The analysis of this conclusion is necessarily complex.

■ The burden of establishing federal jurisdiction is placed on the party seeking removal, *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921), and the removal statute is strictly construed against removal jurisdiction, *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir.1979). Normally, the existence of federal jurisdiction on removal must be determined from the face of the plaintiffs' complaint. *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Underlying these principles is the rationale that a plaintiff should be free to frame

---

**2.** This statute provides, in part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may

be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

and pursue his theory of pleading, especially if the claim could be either or both state and federal. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *Sheeran v. General Electric Co.*, 593 F.2d 93, 96 (9th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). "[W]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." 1A *Moore's Federal Practice* ¶ 0.160, at 185 (2d ed. 1979); *accord, Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir.1981); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 564–69 (1976).

■ In the area of antitrust regulation, there has never been a clear congressional intent to preempt all state regulation. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Cloverleaf Co. v. Patterson*, 315 U.S. 148, 157, 62 S.Ct. 491, 496, 86 L.Ed. 754 (1942). State antitrust laws retain vitality in dealing with matters which significantly affect local interests, even if they also have interstate aspects. *Younger v. Jensen*, 26 Cal.3d 397, 405, 605 P.2d 813, 818, 161 Cal.Rptr. 905, 910 (1980); *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1313 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). The Cartwright Act, the state antitrust law at issue in this case, has been held by California courts to apply to transactions in interstate commerce. *Younger v. Jensen*, 26 Cal.3d at 405, 605 P.2d at 818, 161 Cal.Rptr. at 910.

■ Therefore, federal jurisdiction is not preferred merely because the nature of the claim is such that it could be framed as a federal cause of action as well as one arising under state law. The federal antitrust laws do not preempt the jurisdiction of state courts to determine claims based on state law grounds. "[T]he plaintiff has the prerogative of determining the theory of his action and, so long as fraud is not involved, he may defeat removal to the

federal courts by avoiding allegations which provide a basis for the assertion of federal jurisdiction." *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976).

■ The district court here noted that one important exception to this general principle arises when "[t]he claim, although ostensibly asserted under state law, is in fact a federal law claim but by artful pleading is misrepresented in order to defeat defendant's right to a federal forum." *Salveson*, 525 F.Supp. at 574. The artful pleading doctrine is to be invoked only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results. By its very nature, resolution of such an issue calls for looking outside the face of the complaint. In this case, after analysis of the Supreme Court's decision in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) the district court ruled that the Cartwright claim was really the same Sherman Act claim in disguise against which summary judgment had already been entered, and that it was barred by res judicata. We agree.

In *Moitie* retail purchasers brought seven parallel class actions against various department stores, alleging price-fixing violations of section 1 of the Sherman Act. Moitie and Brown had the same counsel, but while Brown and five others filed in federal court, Moitie filed in state court. (*Brown I*). The six district court cases were all assigned to District Judge Spencer Williams. Moitie's case was then removed from state court to the district court on the basis of both diversity and federal question jurisdiction, and was assigned to the same judge. (*Moitie I*).

The trial court dismissed all seven actions on the theory that consumer plaintiffs could not show injury to their business or property within the meaning of section 4 of the Clayton Act, 15 U.S.C. § 15. Five of the dismissals were appealed to this court. The counsel representing Moitie and Brown elected not to appeal to us but refiled their

cases in state court (*Moitie II* and *Brown II*). The Supreme Court later said of their state court pleadings: "Although the complaints purported to raise only state law claims, they made allegations similar to those made in the prior [district court] complaints * * * " *Moitie,* 452 U.S. at 396, 101 S.Ct. at 2427.

The defendants in the newly filed state court actions removed *Brown II* and *Moitie II* to the district court. The defendants moved to dismiss on grounds of res judicata, and the plaintiffs moved for remand to the state court. The court denied plaintiffs' motions for remand. It next concluded that since the removed cases involved the same parties, same conduct, and the same time frames as had the prior dismissed complaints, res judicata required dismissal again. Accordingly, the court entered judgments dismissing the actions. Moitie and Brown then appealed to this court as the other plaintiffs had already done.

While the seven cases were pending appeal the Supreme Court on June 11, 1979, decided in *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), that retail purchasers may indeed suffer injury to their business or property under section 4 of the Clayton Act, thus undermining the basis upon which the district court had dismissed the seven cases. In light of *Reiter,* this court reversed the judgments in the first five appeals and remanded them to the district court for further proceedings.

As set forth above, the *Moitie II* and *Brown II* appeals had not been heard and thereafter, when the appeals came before us, the *Reiter* decision was of course not directly applicable. Nonetheless, although we agreed with the district court that the state claims were in fact federal claims, *Moitie v. Federated Department Stores, Inc.,* 611 F.2d 1267, 1268 (9th Cir.1980), and although we recognized that "[a] strict application of the doctrine of res judicata would preclude our review * * *," *id.* at 1269, we reasoned that had *Brown I* and *Moitie I* originally been appealed here, in-

stead of detouring to state court, we would also have reversed these judgments. And because they were so "closely interwoven" with the other five cases, we declined to apply rigid application of the rule of preclusion by prior judgment because that would have "defeat[ed] our real purpose, which is to do justice." *Id.* We held therefore that consistency to doctrine should "give way to overriding concerns of public policy and simple justice." *Id.* We reversed and remanded *Moitie II* and *Brown II* to the district court.

The Supreme Court granted certiorari, disagreed, and reversed. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). It rejected our application of tailored justice, stating:

* * * "Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata." * * * The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." * * * We have stressed that "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...."

452 U.S. at 401, 101 S.Ct. at 2429 (citations omitted).

The Supreme Court explicitly agreed that the two state court complaints in *Brown II* and *Moitie II* were really "artfully plead-

ed" federal claims, and that "at least some of the claims had a sufficient federal character to support removal." *Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2. *Contra id.* at 404–09, 101 S.Ct. at 2431–2433 (Brennan, J., dissenting). Citing 14 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 3722, at 564–566 (1976), the Court stated that "courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum * * * [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." *Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2.

Justice Rehnquist's opinion in *Moitie* was primarily concerned with the res judicata aspect rather than with the jurisdictional elements which confront us as a consequence of the district court's treatment of Salveson's case. However, critical in both res judicata and artful pleading considerations was the fact that appellant Brown[3] had previously filed the claims as federal claims in federal court. Having done so, he could not be permitted to recast the same claims as state claims to the prejudice and detriment of the defendants. Avoidance of such untoward results is the proper function of the doctrine of res judicata.

We agree that the conclusion of artful pleading is properly drawn when the plaintiff "by his own conduct, either by filing originally in federal court or by acceding to federal jurisdiction after removal, has made his claim a federal one." *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. at 577.

■ The essential facts of appellant Salveson's case parallel those of *Moitie.* In *Moitie,* the state complaints, which endeavored to allege only state law violations, were still held to constitute disguised Sherman Act claims. Similarly, while Salveson's state court case purported on its face to plead bona fide state law claims, and a breach of the settlement agreement, the facts justified the district court in finding that at least Salveson's Cartwright Act claim was a restyled Sherman Act claim. As that court noted:

> Although plaintiffs' various complaints are models of prolix and confusing pleading, they leave no doubt that the gravamen of the various antitrust charges is the same, *i.e.,* that defendants acted to exclude plaintiffs from the national credit card business. Plaintiffs could have asserted that claim initially under the Cartwright Act. They chose, however, to proceed under the Sherman Act. Beginning in 1977 and continuing until 1981, they repeatedly asserted their claim as a federal claim, thereby invoking this Court's jurisdiction. They maintained their claim as a federal claim until it was dismissed by the Court as untimely. Only then, for the first time, did they purport to assert that claim as a state law claim.
>
> Upon this record, this case presents a classic instance of artful pleading ... *Moitie* is squarely on point and requires denial of the motion to remand.

*Salveson,* 525 F.Supp. at 578. This finding of fact by the district court must stand unless clearly erroneous. Fed.R.Civ.P. 52(a); *Federated Department Stores, Inc. v. Moitie,* 452 U.S. at 397, 101 S.Ct. at 2427. We conclude that the district court was correct in finding that the artful pleading doctrine was applicable in this case and in declining to remand after removal.

■ Plaintiffs also assert several technical claims of error in the removal to federal court. First, Salveson and ECC argue that the failure to join all defendants in the petition for removal required that the action be remanded to state court. However, the non-joined defendants, three credit unions, were never served. Our circuit rule is that a party not served need not be joined; the defendants summonsed can remove by themselves. *See Community Bldg. Co. v. Maryland Casualty Co.,* 8 F.2d 678 (9th

---

3. *Moitie II* was voluntarily dismissed leaving *Brown II* as the subject of the certiorari petition.

452 U.S. at 396, n. 1, 101 S.Ct. at 2427, n. 1.

Cir.1925), *cert. denied,* 270 U.S. 652, 46 S.Ct. 351, 70 L.Ed. 782 (1926).

■ Plaintiffs also claim prejudice and surprise by the district court's decision to treat defendants' Fed.R.Civ.P. 12(b)(6) motion as one for summary judgment. In the context of the history of the case and the arguments of the parties, it appears that the plaintiffs were fairly apprised that the motion necessarily went outside the face of the pleadings and thus could be treated as one for summary judgment in accordance with Rule 12(b). We conclude that the district court did not abuse its discretion in so ruling.

### B. Dismissal of Claims With and Without Prejudice

Finding the removal of the *Salveson* case to federal court to have been proper, the district court refused to remand and dismissed the first six state law claims with prejudice. The seventh claim charged conspiracy to violate the state Cartwright Act by restraining and monopolizing trade in the national general purpose transaction card market, and excluding plaintiffs from that market. In dismissing that claim, the district court deemed itself bound by the derivative jurisdiction principle as construed in this circuit to dismiss for want of jurisdiction. It did so without prejudice. We must now consider what effect *Moitie* may have upon that analysis of the doctrine.

■ The district judge correctly dismissed the six pendent state law claims as barred either by res judicata or the statute of limitations. These claims were within the court's jurisdiction even though the antitrust claim, the basis for federal jurisdiction, was ordered dismissed. This is so because once the federal court acquires jurisdiction of a case on removal, it also acquires jurisdiction over pendent state law claims, whether or not the federal claim proves out. *Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970); *Watkins v. Grover,* 508 F.2d 920 (9th Cir.1974). Since the state claims and the Cartwright-federal antitrust claim

arose out of a common nucleus of operative facts, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the pendent jurisdiction principle applied. 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3722, at 572–73.

Having jurisdiction, the district court exercised its discretion to decide them rather than remanding to state court. And since these claims related to transactions previously concluded by a federal judgment, it was appropriate that the federal court determine whether these new state claims, at least some of which mirrored claims involved in the earlier *Salveson* federal action, were related, or could have been raised. Considerations of judicial economy supported retention of jurisdiction for this prudential inquiry. *See generally In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

■ The district judge found a sufficient relationship to the earlier federal ruling. He held the claims barred either by res judicata or by the statute of limitations. *Salveson,* 525 F.Supp. at 581–585. We affirm these findings for the reasons set forth in the court's well reasoned opinion.

However, we believe the antitrust claim should also have been dismissed with prejudice. The district court reasoned that this claim, clothed as a state law claim but in fact an artfully pleaded federal claim, had to be dismissed without prejudice because of the nature of derivative jurisdiction. Its rationale was that state courts lacked jurisdiction over a Sherman antitrust claim. Therefore, the federal removal court lacked derivative jurisdiction since it depends upon the existence of jurisdiction in the original court. *General Investment Co. v. Lake Shore & Michigan Southern Ry. Co.,* 260 U.S. 261 at 288, 43 S.Ct. 106 at 117, 67 L.Ed. 244 ("[W]hen a cause is removed from a state court into a federal court the latter takes it as it stood in the former.").

■ The removal jurisdiction of a federal court is derivative, 14 C. Wright, A.

Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 574 (1976), and "[i]f the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922).

An apparent anomaly flowing from this doctrine is that upon removal to a federal court of an exclusively federal question, *i.e.*, one over which the state court had no jurisdiction, we have held that the federal court is without jurisdiction to entertain that litigation on its merits. Judge Duniway for this court noted this incongruous result in *Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 658–59 (9th Cir.1972):

> By putting these two principles together, we arrive at an interesting result. If a suit under the federal antitrust laws is filed in a state court, it is removable under 28 U.S.C. § 1441(b). *General Investment Co. v. Lake Shore & Michigan Southern Ry. Co., supra.* However, the state court lacked subject matter jurisdiction. Therefore, because the federal court's removal jurisdiction is derivative, it must dismiss the case following removal. It has no more jurisdiction than the state court. This is the kind of legal tour de force that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction. One would have thought that the purpose of removal in such a case is to get the case out of the court that lacks jurisdiction to hear it and into the court that has jurisdiction, and to keep it in the latter court, so that it can be tried and a valid judgment can be entered.
>
> Nevertheless, the Supreme Court approved this line of reasoning in *Gen'l Investment Co. v. Lake Shore & Michigan Southern Ry. Co.* ....

*See also McClellan v. Kimball*, 623 F.2d 83 (9th Cir.1980).

The Seventh Circuit recently reached a similar conclusion:

> A problematic aspect of removal jurisdiction is that it is derivative, that is, a case can be removed to federal court only if it was properly before the state court. If the state court lacks jurisdiction over either the subject matter or one of the parties, the federal court cannot acquire jurisdiction on removal. This is true even if the case properly could have been brought in federal court in the first instance. * * * However, the rule is so well-entrenched now that it would take legislative action to dislodge it.

*Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 575 (7th Cir.1982) (citations omitted).

However, the Supreme Court's opinion in *Lambert Run* and *General Investment*, and our own ruling in *Washington v. American League of Professional Baseball Clubs*, were decided before *Moitie*, and this more recent teaching of the Supreme Court seriously challenges whether the doctrine of derivative jurisdiction retains its original vitality. Specifically, we deal here with a case in which the subject matter of an artfully pleaded federal claim is such that it could have properly been brought and tried under either federal or state law had its substance not already once been finally adjudicated by the federal court to which it has been removed.

*Lambert Run* does not really dispose of this problem. *Lambert Run* involved a shareholder's suit filed originally in state court seeking to enjoin a railroad from enforcing certain car distribution procedures which, though not so pleaded, were subject to regulation by the Interstate Commerce Commission. The defendant removed the case to federal district court. Plaintiff then moved for a preliminary injunction against the distribution activities. Although the defendant objected to the district court's consideration of plaintiff's motion on the grounds that, since its purpose was to stay an order of the commission, an admittedly applicable statute of Congress required a three-judge court. The district

court nonetheless issued the stay order. On appeal, the Court of Appeals for the Fourth Circuit reversed with directions to dissolve the injunction and to dismiss the bill. It gave as its reasons that the car distribution practice had in fact been authorized by rule of the Commission, and that therefore the bill should have been dismissed. It also held that since the bill sought to enjoin a commission order, relief could be granted only by a three-judge court.

The Supreme Court held that the reversal of the district court was proper, but that

the Circuit Court of Appeals had no occasion to pass upon the merits of the controversy and that the direction should have been to dismiss the bill for want of jurisdiction and without prejudice.

*Lambert Run,* 258 U.S. at 381, 42 S.Ct. at 350. The Court noted that while it did not appear on the face of the pleading that it was a suit to set aside a commission order, "[j]urisdiction cannot be effectively acquired by concealing for a time the facts which conclusively establish that it does not exist." *Id.* at 382, 42 S.Ct. at 351.

*Brown I* and *Moitie I* were dismissed for failure to state a claim under the Clayton Act. They were both refiled in state court, recast as state antitrust and related claims. Both were again removed to the district court. That court refused to remand, construed the complaints as artfully pleaded federal claims, and held them subject to res judicata. This circuit on appeal did not apply the derivative jurisdiction doctrine, which presumably would have allowed only time enough for the federal nature of the claim to be recognized and then, according to the *American League,* would have required dismissal. Nor did we apply preclusion. Instead, we pretermitted res judicata and, in order to do "justice," remanded to the district court for reconsideration on the Clayton Act merits.

The Supreme Court disapproved our "simple justice" determination, but did not invoke *Lambert Run* and *General Investment.* It flatly held that the district

court's unappealed dismissal in *Brown I* was res judicata and reversed.

The Court found it unnecessary to decide whether *Brown I* was res judicata as to the state law claims. It said

It is enough for our decision here that *Brown I* is res judicata as to respondents' federal-law claims. Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Moitie,* 452 U.S. at 402, 101 S.Ct. at 2430.

The Supreme Court did not order the complaint in *Moitie* dismissed "without prejudice." Indeed, having premised its reversal on the conclusion that res judicata applied to end litigation, at least of this federal claim, it seems implicit that the mandate necessarily commanded the Court of Appeals to direct such final determination. That could only be done by a dismissal with prejudice.

 We view the Supreme Court's holding as standing at least for the proposition that if a state claim is found on removal to be an artfully pleaded federal claim which was previously before the federal court and was dismissed, then res judicata is to be applied. The case should again be dismissed but *with* prejudice. The Supreme Court said that this doctrine means "that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Moitie,* 452 U.S. at 401, 101 S.Ct. at 2429 (citing *Baldwin v. Traveling Men's Ass'n,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931)). A dismissal without prejudice opens the door to renewed contest. A dismissal with prejudice brings the contest to a close.

It is true, and the district court may have been influenced by the fact that, California Cartwright Act claims are not preempted by the federal antitrust laws. But the district court's own analysis of appellants' complaint, filed in federal court, was that it clearly alleged a conspiracy by the appellees to violate the Sherman Act by destroy-

ing competition in the national credit card market, by preventing appellants' entry into and expansion of that market. Those allegations were broad enough to have sustained jurisdiction under either state or federal statute. Having elected to "pitch" their pleadings under the federal statute, and having suffered summary judgment from which they did not appeal, appellants' antitrust claims became subject to a bar by judgment which was as extensive as those claims could be deemed to be well pleaded and, in this case, that included generalized interstate commerce (federal) and local commerce (state) components. Analytically, therefore, the judgment bar extended to the issues framed, not to the statutory labels invoked.

Except for the derivative jurisdiction principle, there would be no reason not to apply prejudice to a dismissal under res judicata—so that litigation might end. The decision in *Moitie* has not necessarily undermined the total derivative doctrine, but it simply is not compatible with its application in the circumstances presented by Salveson's case. The federal judgment has extinguished the substance of appellants' antitrust claims, finally and conclusively. If there exists yet another and independent source of existence, that wonder has yet to appear. Dismissal with finality furthers the essential purpose of res judicata. It is particularly appropriate here because, unlike *Moitie*, these parties originally filed their case in federal court, litigated the issue in federal court, and seek now to avoid the inevitable consequences of that course of action. This they may not do.

Accordingly, we remand to the district court with directions to dismiss with prejudice the Cartwright Act claim. The judgment of the district court is in all other respects affirmed.

AFFIRMED in part, and REVERSED and REMANDED WITH DIRECTIONS in part.